# VERIZON MARYLAND INC. *v.* PUBLIC SERVICE COMMISSION OF MARYLAND ET AL.

No. 00–1531.· Argued December 5, 2001—Decided May 20, 2002*

---

*Together with No. 00–1711, *United States* v. *Public Service Commission of Maryland et al.*, also on certiorari to the same court.

636

*Mark L. Evans* argued the cause for petitioner Verizon Maryland Inc. With him on the briefs were *Michael K. Kellogg, Sean A. Lev, Aaron M. Panner, William P. Barr, Mark J. Mathis, Michael D. Lowe,* and *David A. Hill. Barbara McDowell* argued the cause for the United States. With her on the briefs were *Solicitor General Olson, Acting Assistant Attorney General Katsas, Deputy Solicitor General Wallace, Mark B. Stern, Charles W. Scarborough,* and *John A. Rogovin.*

*Susan Stevens Miller* argued the cause and filed a brief for respondent Public Service Commission of Maryland. *Paul M. Smith, William M. Hohengarten, Michael B. DeSanctis, Darryl M. Bradford, John J. Hamill, Thomas F. O'Neil III, William Single IV,* and *Brian J. Leske* filed briefs for respondent MCI WorldCom, Inc., et al.†

---

†*Lesley Szanto Friedman, Aidan Synnott, Martha F. Davis, Isabelle Katz Pinzler, Steven R. Shapiro, Karen K. Narasaki, Vincent A. Eng, Herbert Semmel, Marcia D. Greenberger, Dina R. Lassow,* and *Elliot M. Mincberg* filed a brief for the NOW Legal Defense and Education Fund et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the State of Illinois by *James E. Ryan,* Attorney General, *Joel D. Bertocchi,* Solicitor General, *A. Benjamin Goldgar* and *Michael P. Doyle,* Assistant Attorneys General, *Myra L. Karegianes, John P. Kelliher,* and *Thomas R. Stan-*

JUSTICE SCALIA delivered the opinion of the Court.

These cases present the question whether federal district courts have jurisdiction over a telecommunication carrier's claim that the order of a state utility commission requiring reciprocal compensation for telephone calls to Internet Service Providers violates federal law.

I

The Telecommunications Act of 1996 (1996 Act or Act), Pub. L. 104–104, 110 Stat. 56, created a new telecommunications regime designed to foster competition in local telephone markets. Toward that end, the Act imposed various obligations on incumbent local-exchange carriers (LECs), including a duty to share their networks with competitors. See 47 U. S. C. § 251(c) (1994 ed., Supp. V). When a new entrant seeks access to a market, the incumbent LEC must "provide . . . interconnection with" the incumbent's existing network, § 251(c)(2), and the carriers must then establish "reciprocal compensation arrangements" for transporting and terminating the calls placed by each others' customers, § 251(b)(5). As we have previously described, see *AT&T Corp.* v. *Iowa Utilities Bd.*, 525 U. S. 366, 371–373 (1999), an incumbent LEC "may negotiate and enter into a binding agreement" with the new entrant "to fulfill the duties" imposed by §§ 251(b) and (c), but "without regard to the standards set forth" in those provisions. §§ 252(a)(1),

*ton;* and for the Virginia State Corporation Commission by *William H. Chambliss.*

251(c)(1). That agreement must be submitted to the state commission for approval, § 252(e)(1), which may reject it if it discriminates against a carrier not a party or is not consistent with "the public interest, convenience, and necessity," § 252(e)(2)(A).

As required by the Act, the incumbent LEC in Maryland, petitioner Verizon Maryland Inc., formerly known as Bell Atlantic Maryland, Inc., negotiated an interconnection agreement with competitors, including MFS Intelenet of Maryland, later acquired by respondent MCI WorldCom, Inc. The Maryland Public Service Commission (Commission) approved the agreement. Six months later, Verizon informed WorldCom that it would no longer pay reciprocal compensation for telephone calls made by Verizon's customers to the local access numbers of Internet Service Providers (ISPs), claiming that ISP traffic was not "local traffic"[1] subject to the reciprocal compensation agreement because ISPs connect customers to distant Web sites. WorldCom disputed Verizon's claim and filed a complaint with the Commission. The Commission found in favor of WorldCom, ordering Verizon "to timely forward all future interconnection payments owed [WorldCom] for telephone calls placed to an ISP" and to pay WorldCom any reciprocal compensation that it had withheld pending resolution of the dispute. Verizon appealed to a Maryland state court, which affirmed the order.

---

[1] Section 1.61 of the interconnection agreement provides: "'Reciprocal Compensation' is As Described in the Act, and refers to the payment arrangements that recover costs incurred for the transport and termination of Local Traffic originating on one Party's network and terminating on the other Party's network." In turn, § 1.44 defines "'Local Traffic'" as "traffic that is originated by a Customer of one Party on that Party's network and terminates to a Customer of the other Party on that other Party's network, within a given local calling area, or expanded area service ('EAS') area, as defined in [Bell Atlantic's] effective Customer tariffs. Local Traffic does not include traffic originated or terminated by a commercial mobile radio service carrier."

Subsequently, the Federal Communications Commission (FCC) issued a ruling—later vacated by the Court of Appeals for the District of Columbia Circuit, see *Bell Atlantic Tel. Cos.* v. *FCC*, 206 F. 3d 1 (2000)—which categorized ISP-bound calls as nonlocal for purposes of reciprocal compensation but concluded that, absent a federal compensation mechanism for those calls, state commissions could construe interconnection agreements as requiring reciprocal compensation. Verizon filed a new complaint with the Commission, arguing that the FCC ruling established that Verizon was no longer required to provide reciprocal compensation for ISP traffic. In a 3-to-2 decision, the Commission rejected this contention, concluding that, as a matter of state contract law, WorldCom and Verizon had agreed to treat ISP-bound calls as local traffic subject to reciprocal compensation.

Verizon filed an action in the United States District Court for the District of Maryland, citing 47 U. S. C. § 252(e)(6) and 28 U. S. C. § 1331 as the basis for jurisdiction, and naming as defendants the Commission, its individual members in their official capacities, WorldCom, and other competing LECs. In its complaint, Verizon sought declaratory and injunctive relief from the Commission's order, alleging that the determination that Verizon must pay reciprocal compensation to WorldCom for ISP traffic violated the 1996 Act and the FCC ruling.

The District Court dismissed the action, and a divided panel of the Court of Appeals for the Fourth Circuit affirmed. 240 F. 3d 279 (2001). The Fourth Circuit held that the Commission had not waived its immunity from suit by voluntarily participating in the regulatory scheme set up under the 1996 Act, and that the doctrine of *Ex parte Young*, 209 U. S. 123 (1908), does not permit suit against the individual commissioners in their official capacities. It then held that neither 47 U. S. C. § 252(e)(6) nor 28 U. S. C. § 1331 provides a basis for jurisdiction over Verizon's claims against the private defendants. Both Verizon and the United

States, an intervenor below, petitioned this Court for review of the four questions resolved by the Fourth Circuit. Because we had previously granted certiorari in *Mathias* v. *WorldCom Technologies, Inc.*, 532 U. S. 903 (2001), which raised all but the question whether § 1331 provides a basis for jurisdiction, we granted certiorari only on the § 1331 question and set the case for oral argument in tandem with *Mathias.* 533 U. S. 928 (2001). After oral argument, for reasons explained in our decision in *Mathias* released today, *post*, p. 682, we granted certiorari on the remaining three questions presented in these cases. 534 U. S. 1072 (2001).

## II

WorldCom, Verizon, and the United States contend that 47 U. S. C. § 252(e)(6) and 28 U. S. C. § 1331 independently grant federal courts subject-matter jurisdiction to determine whether the Commission's order requiring that Verizon pay WorldCom reciprocal compensation for ISP-bound calls violates the 1996 Act. Section 252 sets forth procedures relating to formation and commission approval of interconnection agreements, and commission approval and continuing review of interconnection terms and conditions (called "[s]tatements of generally available terms," § 252(f)) filed by LECs. Section 252(e)(6) provides, in relevant part: "In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section." The determination at issue here is neither the approval or disapproval of a negotiated agreement nor the approval or disapproval of a statement of generally available terms. WorldCom, Verizon, and the United States argue, however, that a state commission's authority under § 252 implicitly encompasses the authority to interpret and enforce an interconnection agreement that the commission has ap-

proved,[2] and that an interpretation or enforcement decision is therefore a "determination under [§ 252]" subject to federal review. Whether the text of § 252(e)(6) can be so construed is a question we need not decide. For we agree with the parties' alternative contention, that even if § 252(e)(6) does not *confer* jurisdiction, it at least does not *divest* the district courts of their authority under 28 U. S. C. § 1331 to review the Commission's order for compliance with federal law.

Verizon alleged in its complaint that the Commission violated the Act and the FCC ruling when it ordered payment of reciprocal compensation for ISP-bound calls. Verizon sought a declaratory judgment that the Commission's order was unlawful, and an injunction prohibiting its enforcement. We have no doubt that federal courts have jurisdiction under § 1331 to entertain such a suit. Verizon seeks relief from the Commission's order "on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail," and its claim "thus presents a federal question which the federal courts have jurisdiction under 28 U. S. C. § 1331 to resolve." *Shaw* v. *Delta Air Lines, Inc.*, 463 U. S. 85, 96, n. 14 (1983).

The Commission contends that since the Act does not create a private cause of action to challenge the Commission's order, there is no jurisdiction to entertain such a suit. We need express no opinion on the premise of this argument. "It is firmly established in our cases that the absence of a

---

[2] The Fourth Circuit suggested that both Maryland law and the Federal Communications Act of 1934 grant the Commission authority to interpret and enforce interconnection agreements that it approves under § 252. 240 F. 3d 279, 304 (2001) (citing 47 U. S. C. § 152(b), and Md. Pub. Util. Cos. Code Ann. § 2–113 (1998)). The parties dispute whether it is in fact federal or state law that confers this authority, but no party contends that the Commission lacked jurisdiction to interpret and enforce the agreement.

valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i. e.,* the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co.* v. *Citizens for Better Environment,* 523 U. S. 83, 89 (1998). As we have said, "the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another,' unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" *Ibid.* (citations omitted). Here, resolution of Verizon's claim turns on whether the Act, or an FCC ruling issued thereunder, precludes the Commission from ordering payment of reciprocal compensation, and there is no suggestion that Verizon's claim is "'immaterial'" or "'wholly insubstantial and frivolous.'" *Ibid.*

Verizon's claim thus falls within 28 U. S. C. §1331's general grant of jurisdiction, and contrary to the Fourth Circuit's conclusion, nothing in 47 U. S. C. §252(e)(6) purports to strip this jurisdiction. Section 252(e)(6) provides for federal review of an agreement when a state commission "makes a determination under [§252]." If this does not include (as WorldCom, Verizon, and the United States claim it does) the interpretation or enforcement of an interconnection agreement, then §252(e)(6) merely makes *some other* actions by state commissions reviewable in federal court. This is not enough to eliminate jurisdiction under §1331. Although the situation is not precisely parallel (in that here the elimination of federal district-court review would not amount to the elimination of all review), we think what we said in *Abbott Laboratories* v. *Gardner,* 387 U. S. 136, 141 (1967), is nonetheless apt: "The mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others." (Internal quotation marks and citation omitted.) And here there is nothing more than that

mere fact. Section 252 does not establish a distinctive review mechanism for the commission actions that it covers (the mechanism is the same as § 1331: district-court review), and it does not distinctively limit the substantive relief available. Cf. *United States* v. *Fausto,* 484 U. S. 439, 448–449 (1988). Indeed, it does not even mention subject-matter jurisdiction, but reads like the conferral of a private right of action ("[A]ny party aggrieved by such determination may bring an action in an appropriate Federal district court," § 252(e)(6)). Cf. *Steel Co., supra,* at 90–91 (even a statutory provision that uses the word "jurisdiction" may not relate to "subject-matter jurisdiction"); see also *Davis* v. *Passman,* 442 U. S. 228, 239, n. 18 (1979).

And finally, none of the other provisions of the Act evince any intent to preclude federal review of a commission determination. If anything, they reinforce the conclusion that § 252(e)(6)'s silence on the subject leaves the jurisdictional grant of § 1331 untouched. For where otherwise applicable jurisdiction was meant to be excluded, it was excluded expressly. Section 252(e)(4) provides: "No State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section." In sum, nothing in the Act displays any intent to withdraw federal jurisdiction under § 1331; we will not presume that the statute means what it neither says nor fairly implies.[3]

---

[3] The Commission also suggests that the *Rooker-Feldman* doctrine precludes a federal district court from exercising jurisdiction over Verizon's claim. See *District of Columbia Court of Appeals* v. *Feldman,* 460 U. S. 462 (1983); *Rooker* v. *Fidelity Trust Co.,* 263 U. S. 413 (1923). The *Rooker-Feldman* doctrine merely recognizes that 28 U. S. C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, see § 1257(a). The doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency.

### III

The Commission nonetheless contends that the Eleventh Amendment bars Verizon's claim against it and its individual commissioners. WorldCom, Verizon, and the United States counter that the Commission is subject to suit because it voluntarily participated in the regulatory regime established by the Act. Whether the Commission waived its immunity is another question we need not decide, because—as the same parties also argue—even absent waiver, Verizon may proceed against the individual commissioners in their official capacities, pursuant to the doctrine of *Ex parte Young*, 209 U. S. 123 (1908).

In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U. S. 261, 296 (1997) (O'CONNOR, J., joined by SCALIA and THOMAS, JJ., concurring in part and concurring in judgment); see also *id.*, at 298–299 (SOUTER, J., joined by STEVENS, GINSBURG, and BREYER, JJ., dissenting). Here Verizon sought injunctive and declaratory relief, alleging that the Commission's order requiring payment of reciprocal compensation was preempted by the 1996 Act and an FCC ruling. The prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our "straightforward inquiry." We have approved injunction suits against state regulatory commissioners in like contexts. See, *e. g.*, *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210, 230 (1908) ("[W]hen the rate is fixed a bill against the commission to restrain the members from enforcing it will not be bad . . . as a suit against a State, and will be the proper form of remedy"); *Alabama Pub. Serv. Comm'n* v. *Southern R. Co.*, 341 U. S. 341, 344, n. 4

(1951); *McNeill* v. *Southern R. Co.,* 202 U. S. 543 (1906); *Smyth* v. *Ames,* 169 U. S. 466 (1898); *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362 (1894). Indeed, *Ex parte Young* itself was a suit against state officials (including state utility commissioners, though only the state attorney general appealed) to enjoin enforcement of a railroad commission's order requiring a reduction in rates. 209 U. S., at 129. As for Verizon's prayer for declaratory relief: That, to be sure, seeks a declaration of the *past,* as well as the *future,* ineffectiveness of the Commission's action, so that the past financial liability of private parties may be affected. But no past liability of the State, or of any of its commissioners, is at issue. It does not impose *upon the State* "a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Edelman* v. *Jordan,* 415 U. S. 651, 668 (1974). Insofar as the exposure of the State is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction.

The Fourth Circuit suggested that Verizon's claim could not be brought under *Ex parte Young,* because the Commission's order was probably *not* inconsistent with federal law after all. 240 F. 3d, at 295–297. The court noted that the FCC ruling relied upon by Verizon does not seem to require compensation for ISP traffic; that the Court of Appeals for the District of Columbia Circuit has vacated the ruling; and that the Commission interpreted the interconnection agreement under state contract-law principles. It may (or may not) be true that the FCC's since-vacated ruling does not support Verizon's claim; it may (or may not) also be true that state contract law, and not federal law as Verizon contends, applies to disputes regarding the interpretation of Verizon's agreement. But the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim. See *Coeur d'Alene, supra,* at 281 ("An *allegation* of an ongoing violation of federal law . . . is ordinarily sufficient" (emphasis added)).

Nor does the 1996 Act display any intent to foreclose jurisdiction under *Ex parte Young*—as we concluded the Indian Gaming Regulatory Act did in *Seminole Tribe of Fla.* v. *Florida,* 517 U. S. 44 (1996). There an Indian Tribe sued the State of Florida for violating a duty to negotiate imposed under that Act, 25 U. S. C. § 2710(d)(3). Congress had specified the means to enforce that duty in § 2710(d)(7), a provision "intended . . . not only to define, but also to limit significantly, the duty imposed by § 2710(d)(3)." 517 U. S., at 74. The "intricate procedures set forth in that provision" prescribed that a court could issue an order directing the State to negotiate, that it could require the State to submit to mediation, and that it could order that the Secretary of the Interior be notified. *Id.,* at 74–75. We concluded that "this quite modest set of sanctions" displayed an intent not to provide the "more complete and more immediate relief" that would otherwise be available under *Ex parte Young.* 517 U. S., at 75. Permitting suit under *Ex parte Young* was thus inconsistent with the "detailed remedial scheme," 517 U. S., at 74—and the limited one—that Congress had prescribed to enforce the State's statutory duty to negotiate. The Commission's argument that § 252(e)(6) constitutes a detailed and exclusive remedial scheme like the one in *Seminole Tribe,* implicitly excluding *Ex parte Young* actions, is without merit. That section provides only that when state commissions make certain "determinations," an aggrieved party may bring suit in federal court to establish compliance with the requirements of §§ 251 and 252. Even with regard to the "determinations" that it covers, it places no restriction on the relief a court can award. And it does not even say whom the suit is to be brought against—the state commission, the individual commissioners, or the carriers benefiting from the state commission's order. The mere fact that Congress has authorized federal courts to review whether the Commission's action complies with §§ 251 and 252 does not without more "impose upon the State a liabil-

ity that is significantly more limited than would be the liability imposed upon the state officer under *Ex parte Young.*" *Seminole Tribe, supra,* at 75–76.

\* \* \*

We conclude that 28 U. S. C. § 1331 provides a basis for jurisdiction over Verizon's claim that the Commission's order requiring reciprocal compensation for ISP-bound calls is pre-empted by federal law. We also conclude that the doctrine of *Ex parte Young* permits Verizon's suit to go forward against the state commissioners in their official capacities. We vacate the judgment of the Court of Appeals and remand these cases for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR took no part in the consideration or decision of these cases.

JUSTICE KENNEDY, concurring.

For the reasons well stated by the Court, I agree Verizon Maryland Inc. may proceed against the state commissioners in their official capacity under the doctrine of *Ex parte Young,* 209 U. S. 123 (1908). When the plaintiff seeks to enjoin a state utility commissioner from enforcing an order alleged to violate federal law, the Eleventh Amendment poses no bar. See *Idaho* v. *Coeur d'Alene Tribe of Idaho,* 521 U. S. 261, 271 (1997) (principal opinion of KENNEDY, J., joined by REHNQUIST, C. J.).

This is unlike the case in *Idaho* v. *Coeur d'Alene Tribe of Idaho, supra,* where the plaintiffs tried to use *Ex parte Young* to divest a State of sovereignty over territory within its boundaries. In such a case, a " 'straightforward inquiry,' " which the Court endorses here, *ante,* at 645, proves more complex. In *Coeur d'Alene* seven Members of this Court described *Ex parte Young* as requiring nothing more than an allegation of an ongoing violation of federal law and a

request for prospective relief; they divided four to three, however, over whether that deceptively simple test had been met.

In my view, our *Ex parte Young* jurisprudence requires careful consideration of the sovereign interests of the State as well as the obligations of state officials to respect the supremacy of federal law. See *Coeur d'Alene, supra,* at 267–280 (principal opinion of KENNEDY, J., joined by REHN-QUIST, C. J.). I believe this approach, whether stated in express terms or not, is the path followed in *Coeur d'Alene* as well as in the many cases preceding it. I also believe it necessary. Were it otherwise, the Eleventh Amendment, and not *Ex parte Young,* would become the legal fiction.

The complaint in this litigation, however, parallels the very suit permitted by *Ex parte Young* itself. With this brief explanation, I join the opinion of the Court.

JUSTICE SOUTER, with whom JUSTICE GINSBURG and JUSTICE BREYER join, concurring.

I join the Court's opinion, Part III of which rests on a ground all of us can agree upon:[1] on the assumption of an Eleventh Amendment[2] bar, relief is available under the doctrine of *Ex parte Young,* 209 U. S. 123 (1908). Although that assumption apparently has been made from the start of the litigation, I think it is open to some doubt and so write separately to question whether these cases even implicate the Eleventh Amendment.

---

[1] In so doing, I set aside for the moment my continuing conviction that the interpretation of the Eleventh Amendment that a majority of this Court has embraced is fundamentally mistaken. See *Alden* v. *Maine,* 527 U. S. 706, 760 (1999) (dissenting opinion); *Seminole Tribe of Fla.* v. *Florida,* 517 U. S. 44, 100 (1996) (dissenting opinion).

[2] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U. S. Const., Amdt. 11.

While the State of Maryland is the named defendant, it is only a nominal one. Verizon Maryland Inc., the private party "suing" it, does not seek money damages, or the sort of declaratory or injunctive relief that could be had against a private litigant.[3] Nor does Verizon seek an order enjoining the State from enforcing purely state-law rate orders of dubious constitutionality, the relief requested in *Ex parte Young* itself, *id.*, at 129–131. Instead, Verizon claims that the Maryland Public Service Commission has wrongly decided a question of federal law[4] under a decisional power conferred by the Telecommunications Act of 1996 (Act), a power that no person may wield. Verizon accordingly seeks not a simple order of relief running against the state commission, but a different adjudication of a federal question

---

[3] Cf. *e. g., Board of Trustees of Univ. of Ala.* v. *Garrett*, 531 U. S. 356, 360 (2001) (money damages from the State as employer under Title I of the Americans with Disabilities Act of 1990); *Kimel* v. *Florida Bd. of Regents*, 528 U. S. 62, 66 (2000) (money damages from the State as employer under the Age Discrimination in Employment Act of 1967); *Alden* v. *Maine, supra*, at 712 (money damages from the State as employer under the Fair Labor Standards Act of 1938 in state court); *Florida Prepaid Postsecondary Ed. Expense Bd.* v. *College Savings Bank*, 527 U. S. 627, 633 (1999) (money damages and injunctive and declaratory relief against a State for patent infringement); *College Savings Bank* v. *Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U. S. 666, 671 (1999) (same for trademark violations); *Seminole Tribe, supra*, at 47 (suit to compel State to negotiate in good faith); *Hans* v. *Louisiana*, 134 U. S. 1 (1890) (money damages for failure to honor state securities). In *Seminole Tribe*, a majority of this Court observed "that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment," 517 U. S., at 58, but this was said in the context of a suit for injunctive relief (to enforce a duty to negotiate) as opposed to money damages. My point is that conventional relief of both sorts (and declaratory relief) is different in kind from the judicial review of agency action sought in these cases.

[4] Whether the interpretation of a reciprocal-compensation provision in a privately negotiated interconnection agreement presents a federal issue is a different question which neither the Court nor I address at the present.

by means of appellate review in Federal District Court,[5] whose jurisdiction to entertain the claim of error the Court today has affirmed. If the District Court should see things Verizon's way and reverse the state commission *qua* federal regulator, what dishonor would be done to the dignity of the State, which has accepted congressionally conferred power to decide matters of federal law in the first instance?

One answer might be that even naming the state commission as a defendant in a suit for declaratory and injunctive relief in federal court is an unconstitutional indignity. But I do not see how this could be right. At least where the suit does not seek to bar a state authority from applying and enforcing state law, a request for declaratory or injunctive relief is simply a formality for obtaining a process of review. Cf. 4 K. Davis, Administrative Law Treatise 206 (2d ed. 1983) ("[T]he suit for injunction and declaratory judgment in a district court under 28 U. S. C. § 1331 . . . is now always available to reach reviewable [federal] administrative action in absence of a specific statute making some other remedy exclusive"). And as for the nominal position of a State as defendant, "[i]t must be regarded as a settled doctrine of this court . . . 'that the question whether a suit is within the prohibition of the 11th Amendment is not always determined by reference to the nominal parties on the record.'" *In re Ayers*, 123 U. S. 443, 487 (1887) (alteration in original) (quoting *Poindexter* v. *Greenhow*, 114 U. S. 270, 287 (1885)). If the applicability of the Eleventh Amendment pivots on the formalism that a State is found on the wrong side of the "v." in the case name of a regulatory appeal, constitutional immunity becomes nothing more than an accident of captioning practice in utility cases reviewed by courts. For that matter, the formal and nominal position of a governmental body in these circumstances is not even

---

[5] Judicial review of Federal Communications Commission determinations under the Act is committed directly to the Courts of Appeal. 28 U. S. C. § 2342(1); 47 U. S. C. § 402(a) (1994 ed.).

the universal practice. While the regulatory commission is generally a nominal defendant when a party appeals in the federal system,[6] this is not the uniform practice among the States, several of which caption utility cases on judicial review in terms of the appealing utility.[7]

The only credible response, which Maryland to its credit advances, is that the State has a strong interest in any case where its adjudication of a federal question is challenged.[8] See Supplemental Brief for Respondents MCI WorldCom, Inc., et al. 21–24. An adverse ruling in one appeal can no doubt affect the state commission's ruling in future cases. But this is true any time a state court decides a federal question and a successful appeal is made to this Court, and no one thinks that the Eleventh Amendment applies in that instance. See *Cohens* v. *Virginia*, 6 Wheat. 264, 412 (1821) (a writ of error from a state-court decision is not a "suit" under

---

[6] See 5 U. S. C. §§ 702–703; Fed. Rule App. Proc. 15(a)(2)(B).

[7] See, *e. g.*, *In re Hawaiian Elec. Co.*, 81 Haw. 459, 918 P. 2d 561 (1996); *In re Petition of Interstate Power Co.*, 416 N. W. 2d 800 (Minn. Ct. App. 1987); *Appeal of Campaign for Ratepayers Rights*, 145 N. H. 671, 766 A. 2d 702 (2001); *In re Petition for Declaratory Ruling of Northwestern Public Serv. Co.*, 560 N. W. 2d 925 (S. D. 1997); *In re Citizens Util. Co.*, 171 Vt. 447, 769 A. 2d 19 (2000).

[8] The Fourth Circuit obliquely questioned the strength of the State's interest, noting that "under Maryland law, it is not necessary for the State commission, much less the individual commissioners, to be a party to an appeal for State-court review of its determinations." *Bell Atlantic Md., Inc.* v. *MCI Worldcom, Inc.*, 240 F. 3d 279, 295 (2001). But while the Maryland statute which the Fourth Circuit cited, Md. Pub. Util. Cos. Code Ann. § 3–204(d) (1998), does provide that "[t]he Commission may," not must, "be a party to an appeal," the Maryland courts have specified that the Public Service Commission is one of certain agencies "'the functions of which are so identified with the execution of some definite public policy as the representative of the State, that their participation in litigation affecting their decisions is regarded by the Legislature as essential to the adequate protection of the State's interests.'" *Calvert County Planning Comm'n* v. *Howlin Realty Management, Inc.*, 364 Md. 301, 315, 772 A. 2d 1209, 1216–1217 (2001) (quoting *Zoning Appeals Board* v. *McKinney*, 174 Md. 551, 561, 199 A. 540, 545 (1938)).

the Eleventh Amendment); *McKesson Corp.* v. *Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation,* 496 U. S. 18, 31 (1990) ("The Eleventh Amendment does not constrain the appellate jurisdiction of the Supreme Court over cases arising from state courts") (unanimous Court); cf. U. S. Const., Art. VI ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land").[9]   Whether an issue comes from a state-agency or a state-court decision, the federal court is reviewing the State's determination of a question of federal law, and it is neither prudent nor natural to see such review as impugning the dignity of the State or implicating the States' sovereign immunity in the federal system.

---

[9] A possible ground for distinction is that the Supreme Court reviews state-court decisions while a federal district court initially reviews state-commission decisions under the Act.   The argument would be that the Constitution requires any controversy in which a State's dignitary interests are implicated to be decided by this Court, and no other federal court, as a sign of respect for the State's sovereignty.   See *Farquhar* v. *Georgia* (C. C. D. Ga. 1791) (Iredell, J.), reprinted in 5 Documentary History of the Supreme Court of the United States, 1789–1800, pp. 148–154 (M. Marcus ed. 1994) ("It may also fairly be presumed that the several States thought it important to stipulate that so awful [and] important a Trial [to which a State is party] should not be cognizable by any Court but the Supreme"). But this position has long been rejected and is inconsistent with the doctrine of congressional abrogation, which presumes that States may be sued in federal district court in the first instance when Congress properly so provides, see *Seminole Tribe,* 517 U. S., at 55.