DaimlerChrysler Vans v. Freightliner   CV-03-304-B    01/08/04

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

**DaimlerChrysler Vans LLC**

    **v.**

**Freightliner of New Hampshire, Inc.**

Civil No. 03-304-B
Opinion No. 2004 DNH 010

**MEMORANDUM AND ORDER**

DaimlerChrysler Vans ("DC Vans") seeks a preliminary injunction compelling Freightliner of New Hampshire, Inc. ("Freightliner") to arbitrate a dispute that is currently pending before the New Hampshire Motor Vehicle Industry Board.  I deny DC Vans' request for an injunction because federal law protects Freightliner from having to abide by the arbitration clauses in its dealer contracts.

**I.**

**A.   The Dealer Agreements**

On October 31, 2001, and November 14, 2001, DC Vans entered into agreements authorizing Freightliner to sell "Sprinter"

utility vans from dealerships in Londonderry and Lebanon, New Hampshire (the "Dealer Agreements"). The Dealer Agreements contain clauses that obligate the parties to arbitrate "all controversies, disputes, or claims . . . arising from or relating to [the agreements] . . . ." (Alosa Aff. Ex. 12 Art. 18(3).)

## B. The Target Agreements

The Dealer Agreements require the parties to attempt to reach "Target Agreements" for each year that the Dealer Agreements are in effect. One of the items that the parties must attempt to agree on in each Target Agreement is a "Sales Volume Objective" for the upcoming year. If the parties are unable to agree on a Sales Volume Objective, the Dealer Agreements describe a process by which DC Vans is authorized to establish the objective unilaterally. Freightliner's performances of its sales responsibility will be evaluated in part based on its achievement of the Sales Volume Objective. Additionally, DC Vans uses the Sales Volume Objective in determining Freightliner's eligibility for certain bonuses.

DC Vans sent Freightliner proposed Target Agreements for the Londonderry and Lebanon dealerships in March 2003. Freightliner's president, Joseph Alosa, signed both agreements on

March 27, 2003 but did not immediately return them to DC Vans. Instead, he signed identical copies on April 7, 2003 and sent DC Vans the newly signed agreements. The Londonderry Target Agreement specifies a purchase target of 60 vans and a minimum retail sales target of 52 vans. The Derry Target Agreement specifies a purchase target of 7 vans and a retail sales target of 4 vans.

### C.   The Current Litigation

DC Vans sent Freightliner a notice on July 19, 2002 stating that: (1) it planned to introduce a new Dodge-branded Sprinter van in 2006; (2) the new van would be sold exclusively through Dodge dealers; and (3) until the new van was released, Sprinter vans would be sold by both Freightliner and Dodge dealers.

On February 25, 2003, Freightliner filed an administrative protest with the New Hampshire Motor Vehicle Industry Board challenging the changes that DC Vans proposed to make in its Sprinter van distribution program. DC Vans responded on March 28, 2003 with a demand that Freightliner submit its dispute to arbitration. DC Vans commenced the present action after Freightliner refused to arbitrate.

## II.[1]

DC Vans argues that the arbitration clauses in the Dealer Agreements require Freightliner to arbitrate the current dispute because the dispute "aris[es] from or relat[es] to" the Dealer Agreements. Freightliner responds by claiming that the arbitration clauses are unenforceable under 15 U.S.C. § 1226(a)(2). Section 1226(a)(2) bars a party to a motor vehicle

---

[1] Freightliner contends that I lack subject matter jurisdiction because state law confers exclusive jurisdiction on the Motor Vehicle Industry Board to resolve the current dispute. I disagree. The court plainly has diversity of citizenship jurisdiction to consider what essentially is a contract dispute between the parties. Because the court would have jurisdiction to address the underlying contract dispute, it has jurisdiction to consider DC Vans' demand for arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 n.32 (1983). New Hampshire cannot adopt a law that deprives a federal court of jurisdiction to consider disputes that Congress has given it jurisdiction to address. See Begay v. Kerr-McGee Corp., 682 F.2d 1311, 1315-16 (9th Cir. 1982).

Freightliner also argues that the court lacks jurisdiction based on 15 U.S.C. § 1226(a)(2). It argues that § 1226(a)(2) deprives the court of subject matter jurisdiction because it prevents the court from enforcing the arbitration clauses. Freightliner's argument, however, concerns the merits of DC Vans' claim rather than the court's subject matter jurisdiction.

I was initially concerned that the court may be without jurisdiction based on the Rooker-Feldman doctrine. The Supreme Court, however, has determined that the Rooker-Feldman doctrine has "no application to judicial review of executive action, including determinations made by a state administrative agency." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 644 n.3 (2002). This decision resolves my jurisdictional concern.

franchise contract from enforcing an arbitration clause in the contract unless all parties to the contract consent to arbitration. The law applies, however, only to arbitration agreements that are "entered into, amended, altered, modified, renewed, or extended after November 2, 2002." 15 U.S.C. § 1226(b). Because the Dealer Agreements were executed prior to November 2, 2002, Freightliner's argument has merit only if the 2003 Target Agreements "amended, altered or modified" the Dealer Agreements.

DC Vans offers two arguments to support its contention that the Target Agreements are inconsequential. First, it asserts that the agreements merely implement the Dealer Agreements.[2] I disagree. The Target Agreements establish sales objectives for both dealerships. These objectives were not fixed by the Dealer

_____

[2] DC Vans buttresses its argument by contending that the constitution prevents Congress from applying § 1226(a)(2) to a preexisting dealer agreement unless the "dealership agreement is modified sufficiently in substance that it can be assumed that the parties understood that one of the rights being relinquished was the right to compel arbitration of disputes." (Pl.'s Mem. in Opp. to Mot. to Dismiss at 6.) This assertion misstates the applicable constitutional standard. A claim that a federal statute improperly alters existing contract rights is governed by the due process clause rather than the contract clause and thus is subject to a less exacting standard of review. See Pension Ben. Guar. Corp. v. R.H. Gray & Co., 467 U.S. 717, 732-33 (1984).

Agreements but instead were proposed by DC Vans and agreed to by Freightliner. The sales objectives are significant to both parties because they will be used to determine Freightliner's eligibility for bonuses. The Target Agreements thus make changes to the Dealer Agreements that are sufficiently consequential to qualify as amendments to the Dealer Agreements.

DC Vans' second argument is that the Target Agreements are irrelevant because they did not become effective until after it made its demand for arbitration on March 28, 2003. Because DC Vans has failed to develop this argument, I decline to discuss it in detail. Instead, I merely note that § 1226(a)(2) applies to agreements that are amended at any point after November 2, 2002. The law does not exempt amendments that occur after a demand for arbitration is made. Accordingly, I need not resolve the parties' dispute as to whether the Target Agreements became effective in March, when they were first signed, or in April, when duplicate copies were signed and delivered to DC Vans.

## III.

For the reasons set forth in this Memorandum and Order, I determine that DC Vans is not likely to succeed on the merits of its request for arbitration. Accordingly, it is not entitled to

a preliminary injunction.  See SEC v. Fife, 311 F.3d 1 (1st Cir. 2002) (likelihood of success is a prerequisite to the issuance of a preliminary injunction).  DC Vans' motion for preliminary injunction (doc. no. 4) is denied.  I propose to grant summary judgment to Freightliner unless, on or before January 30, 2004, DC Vans is able to demonstrate that facts material to the resolution of this case remain in genuine dispute.

    SO ORDERED.


                                 _____
                                 Paul Barbadoro
                                 Chief Judge


January 8, 2004

cc:  Gregory A. Holmes, Esq.
     Mary E. Tenn, Esq.
     Richard V. Wiebusch, Esq.