[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 22, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-12310

_____

D. C. Docket No. 03-03222-CV-CC-1

BELLSOUTH TELECOMMUNICATIONS, INC.,

Plaintiff-Appellee,

versus

THE GEORGIA PUBLIC SERVICE COMMISSION, et al.,

Defendants,

AT&T COMMUNICATIONS OF THE SOUTHERN STATES,
L.L.C.,
BIRCH TELECOM OF THE SOUTH, INC.,
NEWSOUTH COMMUNICATIONS CORP.,
WORLDCOM , INC.,
ITC DELTACOM COMMUNICATIONS, INC.,
TALK AMERICA, INC.,
SPRINT COMMUNICATIONS COMPANY, L.P.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(February 22, 2005)**

Before BARKETT, MARCUS and SUHRHEINRICH[*], Circuit Judges.

BARKETT, Circuit Judge:

AT&T Communications of the Southern States, L.L.C.; Birch Telecom of the South, Inc.; NewSouth Communications Corp.; MCI, Inc. (as successor to WorldCom, Inc.); ITC DeltaCom Communications, Inc.; Talk America, Inc.; and Sprint Communications Co., L.P. (collectively "Competitive Local Exchange Carriers," or "CLECs") appeal from a judgment in favor of BellSouth Telecommunications, Inc. ("BellSouth") which reversed a rate-setting decision by the Georgia Public Service Commission ("GPSC").

Under the Telecommunications Act of 1996 ("Act"), 47 U.S.C. § 151 et seq.,[1] the GPSC sets the rates at which BellSouth must lease elements of its local network to its competitors, including Appellants. Contending that the rates set by the GPSC in this case were arbitrary and capricious and violated the law, BellSouth petitioned the district court for review of the GPSC's Order. The district court agreed with BellSouth and remanded the matter for the GPSC to reconsider the rate

---

[*]Honorable Richard F. Suhrheinrich, United States Circuit Judge for the Sixth Circuit, sitting by designation.

[1]The Act requires the local telephone companies that had historically enjoyed a monopoly (such as BellSouth) to lease elements of their networks to competing carriers. The Act grants state utility commissions the authority to set the rates for these forced leases. See 47 U.S.C. § 252. In doing so, the state commissions must abide by federal law, including the rules and methodology established by the Federal Communications Commission.

determination and "to ensure that BellSouth is made whole for any damages

BellSouth has suffered as a result of the prior rates established by the PSC in its

June 24, 2003 and September 22, 2003 orders . . . ."

The CLECs now appeal from that portion of the Final Judgment that orders

the GPSC to make BellSouth whole for damages suffered as a result of the GPSC's

prior unlawfully established rates. The CLECs make three arguments on appeal:[2]

> 1) that the district court lacked jurisdiction to order the GPSC to make
> BellSouth whole because 47 U.S.C. § 252(e)(6) authorizes the district court
> only to review the GPSC's orders, thus precluding it from granting any other
> relief;
>
> 2) that the district court erred by ordering relief without first considering the
> existing interconnection agreements between the parties; and
>
> 3) that the district court's order is an unlawfully retroactive application of
> the Federal Communications Commission's Triennial Review Order
> ("TRO").[3]

We consider each of the CLECs' contentions in turn.


I.  Subject Matter Jurisdiction

BellSouth filed suit for district court review of the GPSC decision at issue in

accordance with § 252(e)(6) of the Act, which provides in relevant part that:

---

[2] We reject BellSouth's contentions that the CLECs either have waived or are estopped from asserting their non-jurisdictional challenges.

[3] Triennial Review Order, 18 F.C.C.R. 16,978 (2003), vacated in part, U.S. Telecom. Ass'n v. FCC, 359 F.3d 554 (D.C. Cir. 2004).

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

47 U.S.C. § 252(e)(6).  The CLECs argue in their brief that because this statute does not expressly authorize the relief afforded by the district court in this case, the district court lacked jurisdiction to order the GPSC to make BellSouth whole.  We find this argument meritless.  As the Supreme Court noted in <u>Davis v. Passman</u>, 442 U.S. 228 (1979),

> [J]urisdiction is a question of whether a federal court has the power, under the Constitution or the laws of the United States, to hear a case; . . . <u>cause of action</u> is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court; and <u>relief</u> is a question of the various remedies a federal court may make available."

<u>Id.</u> at 239 n.18 (citations omitted).  Under § 252(e)(6), the district court properly reviewed the decision of the GPSC which set the rates in this case.  The issue here is not whether the district court had jurisdiction over the case, which it plainly did, but rather whether the district court can grant a remedy when it concludes that a substantive GPSC determination is unlawful.

As to the latter question we note that nothing in § 252(e)(6) purports to limit a federal court's authority to issue specific relief in order to remedy unlawful agency action.  Nothing in the statutory language of § 252(e)(6) requires a district

4

court to give a state commission the opportunity either to grant or deny relief for injuries flowing from its own unlawful actions before a federal court can require that a remedy be provided in a case that is properly before it. To the contrary, the Supreme Court has clearly said that § 252(e)(6) "does not establish a distinctive review mechanism for the commission actions that it covers . . . and it <u>does not distinctively limit the substantive relief available</u>." <u>Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 644 (2002) (emphasis added).

All parties agree that the district court had jurisdiction to consider the merits of this case. In light of the Supreme Court's interpretation of § 252(e)(6), we see no basis to question the power of the district court, acting under the ordinary federal question jurisdiction of 28 U.S.C. § 1331, to award relief by requiring the GPSC, upon remand, to recompense BellSouth for any damages suffered as a result of the erroneous rates set by the GPSC.[4]

## II. The Parties' Interconnection Agreements

The CLECs argue that before ordering the GPSC to assure that BellSouth

---

[4] We do not find <u>BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Serv., Inc.</u>, 317 F.3d 1270 (11th Cir. 2003), or <u>Covad Comm. Co. v. BellSouth Corp.</u>, 374 F.3d 1044 (11th Cir. 2004), applicable, as the question of whether the availability of a particular remedy is a matter of subject-matter jurisdiction was not raised or decided in either case.

was made whole, the district court should have considered the parties' interconnection agreements to determine whether the relief ordered was consistent with those agreements. However, the CLECs concede that none of the agreements were placed before the court by either party. The district court did not err by failing to consider evidence that was not presented to it. On remand, the GPSC is free to consider any agreements that may have relevance to the question of making BellSouth whole for damages suffered as a result of the erroneously set rates.

## III. The Triennial Review Order

Finally, we consider whether the district court's judgment constitutes an unlawfully retroactive application of the Federal Communications Commission's Triennial Review Order. The FCC first developed the methodology for setting forced network lease rates such as the ones at issue in this case in the 1996 Local Competition Order, 11 F.C.C.R. 15,499 (1996). The TRO is one of the FCC's periodic updates to those rules. In ruling that the GPSC's rate calculation was unlawful – a ruling that no party now disputes – the district court relied on both the 1996 Local Competition Order and the TRO. The CLECs now argue that because the TRO did not become effective until October 2003, the district court's order for relief dating back to June 2003 amounts to an unlawfully retroactive application of

6

the TRO.

We reject this argument because the relevant TRO provisions did not establish any new rule, but rather were merely clarifying explanations concerning a rule that had been in force since the 1996 Local Competition Order. See TRO at ¶ 680 ("[W]e clarify that a TELRIC-based cost of capital should reflect the risks of a competitive market.") (emphasis added). Thus, the district court's reliance on the TRO presents no retroactivity problems, and in no way prohibits the remedial relief here ordered.[5]

**AFFIRMED.**

---

[5] The CLECs also argue that the TRO provides for gradual implementation of the new rules announced within, see TRO at ¶¶ 700-704, and that the relief ordered violates this provision for gradual implementation. For the same reasons, we find this argument to be similarly without merit.