# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

Argued May 14, 2013            Decided July 19, 2013

No. 13-1019

DOMINION TRANSMISSION, INC.,
PETITIONER

v.

ROBERT SUMMERS, IN HIS OFFICIAL CAPACITY AS SECRETARY
OF THE MARYLAND DEPARTMENT OF THE ENVIRONMENT AND
MARYLAND DEPARTMENT OF THE ENVIRONMENT,
RESPONDENTS

MYERSVILLE CITIZENS FOR A RURAL COMMUNITY, INC.,
INTERVENOR

————

On Petition for Review of an Order of
the Maryland Department of the Environment

————

*Christopher T. Handman* argued the cause for petitioner. With him on the briefs were *J. Patrick Nevins* and *Sean Marotta*.

*Joan Dreskin* and *Dan Regan* were on the brief for *amicus curiae* Interstate Natural Gas Association of America in support of petitioner.

*Roberta R. James*, Assistant Attorney General, Office of the Attorney General for the State of Maryland, argued the

cause for respondents.   With her on the brief was *Douglas F. Gansler*, Attorney General.

*Carolyn Elefant* argued the cause and filed the brief for intervenor.

Before: HENDERSON, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Hoping to construct a natural gas compressor station in Myersville, Maryland, Dominion Transmission, Inc., applied for and received a certificate of public convenience and necessity from the Federal Energy Regulatory Commission. To proceed with construction, however, Dominion must also obtain an air quality permit from the Maryland Department of the Environment (the Department). After the Department twice refused to process Dominion's application for a permit, Dominion sought expedited review by this court. Because we hold that the Department's failure to act is inconsistent with federal law, we remand the case to the Department and direct it to adhere to a schedule to ensure prompt action on Dominion's application.

I

A

The Natural Gas Act (NGA), 15 U.S.C. §§ 717-717z, establishes a "comprehensive scheme of federal regulation" that vests FERC with "exclusive jurisdiction over the transportation . . . of natural gas in interstate commerce for resale." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300-01 (1988). Before a company may construct a facility that

transports natural gas, it must obtain from FERC "a certificate of public convenience and necessity," 15 U.S.C. § 717f(c), and comply with all other federal, state, and local regulations not preempted by the NGA.

One regulatory regime the NGA expressly does not preempt is the system of state emissions regulations established by the Clean Air Act (CAA), 42 U.S.C. §§ 7401-7671q. *See* 15 U.S.C. § 717b(d)(2). Air quality regulation under the CAA is an exercise in cooperative federalism: The Environmental Protection Agency "promulgates national ambient air quality standards ('NAAQS') for air pollutants." *Michigan v. EPA*, 213 F.3d 663, 669 (D.C. Cir. 2000) (citing 42 U.S.C. § 7410(a)(1) (1994)). If states wish to have a hand in air quality regulation, they "must then adopt state implementation plans ('SIPs') providing for the implementation, maintenance, and enforcement of the NAAQS; such plans are then submitted to EPA for approval." *Id.* To win approval, a SIP must include an air quality permit program for the "construction of any stationary source within the areas covered by the plan [in order] to assure that [NAAQS] are achieved." 42 U.S.C. § 7410(a)(2)(C).

Maryland's SIP consists of a collection of regulations and requirements that are incorporated by reference into the Code of Federal Regulations. *See* 40 C.F.R. § 52.1070. The Department, headed by respondent Secretary Robert Summers, administers Maryland's air quality control program, including Maryland Code § 2-404, which governs the issuance of permits to construct emissions sources. The present controversy centers on § 2-404(b)(1), which prohibits the Department from processing an application for a permit until the applicant submits documentation:

> (i) That demonstrates that the [proposed source] has been approved by the local jurisdiction for all zoning and land use requirements; or
>
> (ii) That the source meets all applicable zoning and land use requirements.

Md. Code § 2-404(b)(1). In other words, the successful applicant must show that the project has received approval from the local authority or otherwise satisfies local law.

Because the administrative demands of these various requirements can impede "public convenience and necessity," 15 U.S.C. § 717f(e), Congress designated FERC as "the lead agency for the purposes of coordinating all applicable Federal authorizations," including air quality permits. 15 U.S.C. § 717n(b). Additionally, Congress provided for expedited judicial review of federal or state agency action or inaction that deprives a company building a FERC-certified natural gas facility of an authorization it requires to proceed with construction. 15 U.S.C. § 717r(d). We proceed under § 717r(d) in this case.

B

Dominion, which stores and transports natural gas across the Northeast and Mid-Atlantic regions, is in the process of building infrastructure and facilities in Maryland, Ohio, Pennsylvania, and West Virginia as part of a long-range plan to increase its capacity. One such facility is a compressor station that Dominion hopes to build in Myersville, Maryland.[1] The

---

[1] A compressor "boost[s] the system pressure" along pipelines in order to "maintain required flow rates." FERC, AN INTERSTATE

compressor station will include equipment that emits pollutants.

On February 1, 2012, Dominion submitted an air quality permit application to the Department. A week later, the Department notified Dominion that it had failed to provide the documentation of zoning compliance required by § 2-404(b)(1). Dominion replied on March 8 with a letter explaining that the compressor station would comply with zoning and land use requirements. The next month, Dominion filed a zoning application with the Town of Myersville. Pet'r's Br. 11. A group of residents organized the Myersville Citizens for a Rural Community (MCRC), the Intervenor in this case, to oppose the application. On June 5, while the zoning application was pending, the Department returned Dominion's air quality permit application "for lack of documentation that demonstrates that the project has been approved by the local jurisdiction for all zoning and land use requirements." Sup. J.A. 101. In August, the Town of Myersville denied Dominion's zoning application on the grounds that the proposed compressor station was contrary to the local development plan, endangered public health, and posed a nuisance.[2]

---

NATURAL GAS FACILITY ON MY LAND? WHAT DO I NEED TO KNOW? 22 (2010).

[2] Dominion subsequently filed a declaratory judgment action against the Town of Myersville, its town council, and its mayor, seeking a declaration that the town's relevant ordinances, rules, and regulations are preempted by federal law. *Dominion Transmission, Inc. v. Town of Myersville Town Council*, Case No. 1:13-cv-00338-RDB (D. Md.). Although Dominion's complaint in that action presents some of the same questions of law as its petition to this court, that action has no bearing on this petition.

On December 20, 2012, FERC issued a certificate of public convenience and necessity for a number of Dominion facilities, including the compressor station in Myersville. *Dominion Transmission, Inc.*, 141 F.E.R.C. ¶ 61,240 (2012). FERC concluded that there was "strong evidence of market demand" for natural gas transportation capacity, demonstrating the need for the facility. *Id.* at 62,297. FERC's detailed order addressed comments critical of the proposed location but ultimately concluded that "the Myersville site is the more appropriate site for the Maryland compressor station." *Id.*

The next day, with FERC's certificate in hand, Dominion applied to the Department once again for an air quality permit. Its cover letter stated it now satisfied § 2-404(b)(1) because all local zoning and land use requirements had been preempted by FERC's certificate and were therefore not "applicable." J.A. 3-5. On January 15, 2013, the Department verbally informed Dominion that it would not be able to process the application. On January 17, responding to a protest MCRC sent to the Governor, the Department sent a letter reassuring the group that it would not proceed with the application because Dominion had failed to provide the documentation of compliance required by § 2-404(b)(1). The Department sent a copy of the letter to Dominion, as well. After receiving the letter, Dominion petitioned this court for review of the Department's reasons for refusing to process its application.

C

The Department argues that we cannot consider this case because the requirements of our jurisdictional statute have not been met and that, in any event, it is immune from our jurisdiction by virtue of the Eleventh Amendment. We consider and reject both arguments in turn.

The NGA authorizes us to review "an alleged failure to act by a . . . State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit required under Federal law . . . for a facility subject to . . . section 717f of this title." 15 U.S.C. § 717r(d)(2). The Department argues that Dominion has not alleged the required "failure to act" because the refusal to process the application was the result of numerous *actions*, including a review of the application, a determination that it was inadequate under § 2-404(b)(1), and notifications to interested parties. But the Department's argument focuses too narrowly on the phrase "failure to act" and disregards the rest of the provision. Section 717r(d)(2) gives us jurisdiction over "an alleged failure to act . . . *to issue, condition, or deny*" a permit. 15 U.S.C. § 717r(d)(2) (emphasis added). The issue is not, as the Department would have it, whether an agency has done anything at all in response to an application. Rather, the issue is whether the Department has failed "to issue, condition, or deny" a permit. Because the Department has refused to take any of these actions, we have jurisdiction to consider whether its decision is lawful.

The Department also asserts Eleventh Amendment immunity to our jurisdiction on the ground that it is an agency of the State of Maryland. *See* U.S. CONST. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ."); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Dominion responds that Maryland has waived its sovereign immunity by exercising its enforcement powers under the CAA. *See, e.g.*, *Islander E. Pipeline Co., LLC v. Conn. Dep't of Envt'l*

*Protection*, 482 F.3d 79, 89-90 (2d Cir. 2006) (holding that participation in federal permitting programs waives immunity from suits under § 717r(d)). We need not decide whether Maryland has done so because we hold that Dominion may proceed against Secretary Summers under the doctrine of *Ex Parte Young*, which provides that the Eleventh Amendment does not bar suits against state officers for prospective relief. *See Verizon Md. v. Md. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (We conduct "a straightforward inquiry into whether [the petition] alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."). Dominion's petition easily satisfies that standard: Dominion alleges that the Department's failure to act was "contrary to law," Pet'r's Br. 35, and seeks prospective relief in the form of an order directing Secretary Summers to process Dominion's application. *Id.*

## II

Turning to the merits, we must determine whether the Department's failure to act on Dominion's application for an air quality permit was "inconsistent with . . . Federal law." 15 U.S.C. § 717r(d)(3). The parties agree that, in this context, we must ask whether the Department's failure was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *See* Pet'r's Br. 18-19; Resp'ts' Br. 13-14; Intervenor's Br. 16-17; *see also AES Sparrows Point LNG, LLC v. Wilson*, 589 F.3d 721, 727 (4th Cir. 2009); *Islander E. Pipeline*, 482 F.3d at 94.

## A

Dominion argues that the Department acted contrary to law by requiring a demonstration under § 2-404(b)(1) that the proposed compressor station was in compliance with local law.

The NGA preempted that state law requirement, Dominion argues, to the extent that it calls for more from a natural gas facility than does FERC. We disagree that the NGA preempted § 2-404(b)(1). It is true, as the Supreme Court observed, that Congress intended to occupy the field to the exclusion of state law by establishing through the NGA a "comprehensive scheme of federal regulation of all wholesales of natural gas in interstate commerce." *Schneidewind*, 485 U.S. at 300 (internal quotation marks omitted). But Congress expressly saved states' CAA powers from preemption. 15 U.S.C. § 717b(d)(2). In other words, laws that are part of a state's SIP are not preempted, unless the NGA says otherwise. Our inquiry therefore turns on whether § 2-404(b)(1) is part of Maryland's SIP. Dominion argues it is not because it is absent from the section of the Code of Federal Regulations that lists the Maryland laws that EPA has approved as part of Maryland's SIP. *See* 40 C.F.R. § 52.1070(c). But Dominion takes too narrow a view of Maryland's SIP. When EPA approves a state SIP, it incorporates the relevant state law into the Code of Federal Regulations by reference. *See id.* § 52.1070(b). The Code of Federal Regulations lists provisions of the Code of Maryland Regulations (COMAR), and two of the regulations, in turn, quite clearly incorporate § 2-404(b)(1). *See* COMAR §§ 26.11.02.01(B)(7), 26.11.02.11(D). Incorporation by reference makes § 2-404(b)(1) part of Maryland's SIP. The provision is therefore saved from preemption by the NGA.

B

Even so, Dominion asserts, the Department's argument cannot rely on § 2-404(b)(1) because Dominion has in fact complied with its terms. Recall that § 2-404(b)(1) requires an applicant to provide documentation that establishes that its project has been approved by local authorities or, lacking that approval, demonstrates how that project nevertheless meets

"all applicable zoning and land use requirements." Unable to show local approval, Dominion attempted to show compliance with zoning and land use requirements. With its second application for an air quality permit, Dominion included FERC's certificate of public convenience and necessity and a letter arguing "that the requirements of § 2-404(b)(1) are satisfied." J.A. 5. Dominion's letter points out that § 2-404(b)(1) requires documentation of compliance with "applicable" local requirements, then argues, correctly, that local law preempted by a federal law is not "applicable" because the Supremacy Clause bars its enforcement by a state agency. FERC's certificate preempts all local requirements that regulate in the same field as the NGA – including, according to Dominion, those requirements on which the Myersville Town Council based its zoning decision. Because those local requirements are preempted by federal law, they are no longer "applicable," and Dominion reasons that it need not demonstrate compliance with them to satisfy § 2-404(b)(1).

In its January 17 letter to MCRC and in its briefs to this court, the Department relied on two reasons for rejecting Dominion's analysis. In the Department's view, a letter from a permit applicant is not the type of documentation called for by § 2-404(b)(1), and FERC's certificate did not do all that Dominion claims because it did not expressly preempt Myersville's zoning and land use requirements.

According to the Department, a statement of compliance from the local zoning authority is the only documentation that satisfies § 2-404(b)(1). The Department asserts that it "has consistently interpreted the documentation requirement in § 2-404(b) [as] requiring a letter or statement from a local zoning authority that any proposed construction project has local zoning approval or otherwise meets local zoning and land

use requirements." Resp'ts' Br. 24.[3] But this interpretation is inconsistent with the plain meaning of § 2-404, which expressly permits the applicant to avoid involvement by the local zoning authority altogether. Subsection (ii) states that § 2-404(b)(1) may be satisfied by documentation "that the source meets all applicable zoning and land use requirements." If subsection (ii) required a statement or letter from the local zoning authority, then it would differ in no meaningful respect from subsection (i), which permits applicants to satisfy § 2-404(b)(1) with documented approval by the local zoning authority. This is not a sensible reading of the statute, which separates (i) and (ii) with a disjunctive "or." The Department's reading would render one provision or another mere surplusage. The Department's purported requirement of a written statement from the local zoning authority is therefore contrary to law.

Although it is true that the FERC certificate "does not definitively state that all of Myersville's applicable zoning requirements are preempted in this particular case . . . ," J.A. 1, that does not relieve the Department of its obligation to explain

---

[3] The Department cites a single source advancing this allegedly long-standing interpretation: a letter to another permit applicant stating that "[t]he required documentation must be in the form of a letter or written statement from the local zoning authority." Resp'ts' Br. Addendum A-64. That letter, which we have no reason to believe is publicly available, does not even support the Department's strained interpretation. Instead, it refers only to § 2-404(b)(1)(i), stating that the applicant "must submit documentation that demonstrates that the proposal has been approved by the local jurisdiction for all zoning and land use requirements." *Id.* It is unclear to us why the letter does not refer to § 2-404(b)(1)(ii), the alternative to subpart (i) that does not require approval by the local jurisdiction.

why it has refused to process Dominion's application. Section 2-404(b)(1) forbids the Department from processing only those applications for projects that do not comply with "applicable" local laws, so the Department may not rely on that provision to refuse to process an application if the only local laws with which an applicant fails to demonstrate compliance are preempted. As FERC explained, "state and local regulation is preempted by the NGA to the extent they [sic] conflict with federal regulation, or would delay the construction and operation of facilities approved by" FERC. *Dominion Transmission*, 141 F.E.R.C. at 62,298. Presented with a FERC certificate that approves Dominion's compressor station, the Department must apply this standard to determine which of Myersville's zoning and land use requirements it preempts, and which remain "applicable" to Dominion's compressor station. The absence of express preemption in FERC's certificate should play no role in that analysis. FERC properly chose to let the Department – the agency charged with administering § 2-404(b)(1) – determine in the first instance which of Myersville's requirements are preempted, and which are "applicable." *Dominion Transmission*, 141 F.E.R.C. at 62,298.

Believing, like FERC, that the Department is better situated to determine whether Dominion has complied with § 2-404(b)(1), we remand. *See* 15 U.S.C. § 717r(d)(3). *Cf. PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) ("[W]hen [we] determine[] that an agency made an error of law, [our] inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards."). On remand, the Department must either identify one or more "applicable" (that is, not preempted) zoning or land use requirements with which Dominion has not demonstrated compliance, or it must process Dominion's application for an air quality permit. An order directing the

parties to propose a schedule for prompt action on remand accompanies this decision.

## III

Because the Department's failure to act to grant, condition, or deny Dominion's air quality permit was inconsistent with federal law, we grant Dominion's petition and remand for further action consistent with this opinion.

*So ordered.*