Reversed and remanded in part, affirmed in part, and dismissed in part by published opinion. Judge MICHAEL wrote the opinion, in which Judge GREGORY joined. Judge NIEMEYER wrote a separate opinion, concurring in part and dissenting in part.
MICHAEL, Circuit Judge:
This case arises from the regulatory scheme created by the Telecommunications Act of 1996 (1996 Act or Act), Pub.L. 104-104, 110 Stat. 56, to promote competition in local telephone markets. It is now before us for the second time after a remand by the Supreme Court. The main question today is this: whether a federal court has jurisdiction over a local carrier’s claim that a state utility commission misinterpreted interconnection agreement provisions on reciprocal compensation that are based on federal law. We hold that there is federal question jurisdiction under 28 U.S.C. § 1331. We also hold that the state utility commission had the authority under federal law to impose reciprocal compensation terms in arbitration proceedings. We reject the state commissioners’ arguments that the regulatory scheme in the 1996 Act violates the Tenth Amendment, that the incumbent local carrier’s amended complaint fails to state a claim, and that the action was not filed on a timely basis. The case will be remanded for further proceedings on the incumbent local carrier’s contract misinterpretation claim.
I.
A.
Before the Telecommunications Act of 1996 came along, telephone service in a local calling area was provided by a single local exchange carrier (local carrier), operating as a state-licensed monopoly. The 1996 Act ended the monopoly system and opened local telephone markets to competition. Congress, of course, recognized that a new carrier would not be able to break into a local market if it had to bear the prohibitive costs of building an entire telephone network. See MCI Telecomm. Corp. v. Bell Atl.-Pa., 271 F.3d 491, 498 (3d Cir.2001). Section 251 of the Act therefore requires an incumbent local carrier to share its network and services, on reasonable rates and terms, with a competing carrier seeking to enter a local telephone market. 47 U.S.C. § 251.
A competing carrier may enter a local market by interconnecting with the network of the incumbent local carrier. Interconnection allows “for the transmission and routing of telephone exchange service and exchange access.” Id. § 251(c)(2)(A). The duty to interconnect is coupled with other duties set forth in § 251, including the “duty [of all local carriers] to establish *359 reciprocal compensation arrangements for the transport and termination” of telephone calls. Id. § 251(b)(5). The FCC by regulation has limited the reciprocal compensation requirement to local traffic. 47 C.F.R. § 51.701(a) (1996). Thus, when a customer of local carrier A places a call to a customer of local carrier B in the same local exchange area, carrier A pays carrier B for completing the call, usually on a per-minute basis; when the direction is reversed, carrier B pays carrier A for completing the call.
The terms under which two competing local carriers interconnect their networks and provide for reciprocal compensation are set forth in an interconnection agreement. The Act requires both parties to negotiate in good faith in an effort to reach agreement. 47 U.S.C. § 251(c)(1). If the parties fail to reach agreement, § 252 allows the state utility commission to resolve disputed issues through compulsory arbitration. Id. § 252(c)(1). The resulting agreement, whether arrived at through negotiation or arbitration, must be submitted to the state commission for approval. Id. § 252(e). (If a state commission fails to assume this role, the FCC must step in and fill it. Id. § 252(e)(5).) Any party aggrieved by a state commission’s determination under § 252 of the Act may bring an action in federal district court “to determine whether the [interconnection] agreement ... meets the requirements” of § 251 and § 252 of the Act. Id. § 252(e)(6).
B.
When the Act went into effect in 1996, Verizon (then called Bell Atlantic Maryland, Inc.) was providing local telephone service in Maryland. As the incumbent local carrier, Verizon proceeded to negotiate an interconnection agreement with a competing local carrier, MFS Intelenet of Maryland, Inc. (We will refer to MFS In-telenet in the name of its successor, MCI WorldCom, Inc. (MCI).) The agreement, signed in July 1996 and approved by the Maryland Public Service Commission (PSC) in October 1996, required the payment of reciprocal compensation “for transport and termination of Local Traffic.” J.A. 76. After Verizon and MCI negotiated their interconnection agreement, Verizon entered into substantively identical agreements with certain other competing local carriers. The later interconnection agreements were also approved by the PSC.
" A dispute soon arose between Verizon and MCI over whether Verizon had to pay MCI reciprocal compensation for calls Verizon customers made to the local numbers of internet service providers (ISPs) that were MCI customers. Verizon claimed that these ISP-bound calls are not local traffic because ISPs connect their calls to distant internet websites. The issue comes up for a simple reason: ISP-bound traffic goes in one direction; the customers call the ISPs, but the ISPs do not call back. This means that the reciprocal compensation for these calls also flows in one direction, to the local carriers completing the calls to the ISPs. This situation, Verizon says, has provided a windfall for competing’ local carriers that focus on serving ISPs for the purpose of collecting reciprocal compensation on this one-directional traffic.
In April 1997 Verizon stopped paying MCI reciprocal compensation for local exchange calls to ISPs served by MCI. No reciprocal compensation was due, Verizon said, because the 1996 Act and the interconnection agreement treat these ISP-bound calls as non-local. In May 1997 MCI filed a complaint with the Maryland PSC, alleging that Verizon’s refusal, to pay reciprocal compensation violated the 1996 Act and the interconnection agreement. *360 The PSC ruled against Verizon in September 1997, holding that ISP-bound calls are local and ordering Verizon to pay reciprocal compensation to MCI on these calls. The PSC noted that it would reconsider its order if the FCC, which was considering how to treat ISP-bound calls, issued a decision that resolved the issue. Before any word came from the FCC, the PSC considered the issue a second time when Verizon in late 1998 refused to sign an interconnection agreement with Sprint Communications Company, LP (Sprint) unless it provided that ISP-bound traffic did not require the payment of reciprocal compensation. Sprint, invoking § 252(b)(1) of the Act, petitioned the PSC to arbitrate this issue, and the PSC again concluded that these calls are local and subject to reciprocal compensation.
In February 1999 the FCC issued a ruling that classified ISP-bound calls as non-local calls that do not qualify for reciprocal compensation under § 251(b)(5). In the Matter of Implementation of the Local Competition Provisions in the Telecommun. Act of 1996, 14 F.C.C.R. 3689 (1999) (ISP Order No. 1), vacated, Bell Atl. Tel. Cos. v. FCC, 206 F.3d 1 (D.C.Cir.2000). In reaching this decision, the FCC looked at the starting and ending points of the calls and concluded that they terminate not with the ISP, but at the websites eventually accessed by the internet user. ISP Order No. 1 at ¶ 12. The Commission said, however, that “pending adoption of [an FCC] rule establishing an appropriate interstate compensation mechanism,” it had “no reason to interfere with state commission findings as to whether reciprocal compensation provisions of interconnection agreements apply to ISP-bound traffic.” Id. at ¶21. Likewise, the FCC said, when the parties could not voluntarily agree on a compensation mechanism for ISP-bound traffic, state commissions “may determine in their arbitration proceedings at this point that reciprocal compensation should be paid for this traffic.” Id. at ¶ 25 (emphasis added).
Verizon immediately petitioned the Maryland PSC to reconsider its earlier orders, arguing that the FCC’s ISP Order No. 1 meant that Verizon no longer had to pay reciprocal compensation for ISP-bound calls. The PSC denied Verizon relief in an order issued on June 11, 1999. In reaffirming its decision interpreting the Verizon-MCI agreement, the PSC noted that ISP Order No. 1 did not prohibit it from ordering reciprocal compensation under the terms of a negotiated interconnection agreement. In reaffirming its order in the Sprint-Verizon arbitration, the PSC noted that the FCC was allowing state commissions, in arbitration proceedings, to require reciprocal compensation on ISP-bound calls as an “ ‘interim inter-carrier compensation rule’ pending completion of FCC rulemaking on this issue.” J.A. 58 (quoting ISP Order No. 1 at ¶ 27). Later, on February 10, 2000, in an arbitration proceeding between MCI and Verizon, the PSC (relying on its June 11, 1999, order) imposed terms requiring the payment of reciprocal compensation on ISP-bound traffic.
In March 2000 the D.C. Circuit vacated ISP Order No. 1 and rejected the FCC’s end-to-end analysis as a basis for classifying the calls. Bell Atl. Tel. Cos. v. FCC, 206 F.3d 1 (D.C.Cir.2000). On remand in April 2001, the FCC, using a different reason, again exempted ISP-bound calls from reciprocal compensation. In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Intercarrier Compensation for ISP-Boimd Traffic, 16 F.C.C.R. 9151, ¶ 31 (2001) (ISP Order No. 2). This time the FCC determined that ISP-bound traffic was a form of “information access” that qualified under § 251(g) *361 for an exemption from § 251(b)(5)’s reciprocal compensation obligation. Recognizing, however, that some form of compensation for delivering ISP-bound calls was necessary, the FCC established a new payment system for these calls, a “bill-and-keep” system, under which each carrier recovers its costs from its own customers. The new system was to take effect on June 14, 2001, and was to be implemented only as existing interconnection agreements expire. The FCC did not disturb state commission decisions issued before June 14, 2001, that required reciprocal compensation for ISP-bound traffic. Id. affl 82. When ISP Order No. 2 was challenged in the D.C. Circuit, the court held that § 251(g) did not provide a basis for the FCC’s decision. Without vacating the FCC’s order, the court remanded the case to allow the agency to come up with a sustainable basis for the new compensation system. See WorldCom, Inc. v. FCC, 288 F.3d 429 (D.C.Cir.2002).
Meanwhile, in July 1999 Verizon filed this action in federal court to review the Maryland PSC’s June 11, 1999, order that required Verizon to pay reciprocal compensation to competing local carriers for delivering ISP-bound traffic. Named as defendants were the PSC, its individual commissioners in their official capacities, MCI, and other competing local carriers. District court jurisdiction was invoked under 47 U.S.C. § 252(e)(6) and 28 U.S.C. § 1331. Verizon sought declaratory and injunctive relief, alleging that the PSC’s order violated the 1996 Act, the FCC’s (not yet vacated) ISP Order No. 1, and the interconnection agreement. (Like the parties, we refer to “interconnection agreement” in the singular because the agreements between Verizon and the competing carriers have substantially similar terms.) The district court dismissed the action, and we affirmed on the ground that neither 47 U.S.C. § 252(e)(6) nor 28 U.S.C. § 1331 provides a basis for federal jurisdiction. Bell Atlantic Md., Inc. v. MCI WorldCom, Inc., 240 F.3d 279 (4th Cir.2001). The Supreme Court took the case and vacated our decision. Verizon Md. Inc. v. Pub. Serv. Comm’n of Md., 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). The Court concluded that Verizon’s claim that the PSC’s order was barred by federal law fell within § 1331’s “general grant of jurisdiction.” Id. at 643, 122 S.Ct. 1753. Although the Court declined to reach the issue of whether § 252(e)(6) provided an alternative basis of jurisdiction, it emphasized that “nothing in 47 U.S.C. § 252(e)(6) purports to strip [§ 1331] jurisdiction.” Id. Section 252(e)(6), the Court said, “does not even mention subject-matter jurisdiction, but reads like the conferral of a private right of action.” Id. at 644, 122 S.Ct. 1753. The case was sent back to us.
Following our remand to district court, Verizon filed an amended complaint that, among other changes in parties, dropped the PSC as a defendant and substituted as defendants new PSC commissioners for their predecessors. Count I alleged that the PSC’s June 11, 1999, order classifying ISP-bound calls as local traffic violated “federal law and ... the language of [the interconnection] agreement! ].” J.A. 40. Count II alleged that the PSC lacked the authority to require reciprocal compensation in arbitration proceedings. The district court proceeded by first denying the PSC commissioners’ motion to dismiss made on the grounds (1) that the 1996 Act violates the Tenth Amendment and (2) that Verizon’s amended complaint did not state a claim. See Verizon Md. Inc. v. RCN Telecom Servs. of Md. Inc., 232 F.Supp.2d 539 (D.Md.2002). The district court then decided the parties’ cross-motions for summary judgment. See Verizon Md. Inc. v. RCN Telecom Servs. of Md. Inc., 248 *362 F.Supp.2d 468 (D.Md.2003). In its summary judgment decision the district court recognized its jurisdiction over Count II of Verizon’s amended complaint, which it regarded as a “garden-variety federal preemption claim,” and held that federal law did not prohibit the PSC from imposing reciprocal compensation terms in an arbitration proceeding. Id. at 476, 486-87. The Court therefore awarded summary judgment on Count II to the defendants (the competing carriers and the PSC commissioners). Id.
On Count I the district court first determined that Verizon was actually asserting two distinct claims: first, that the PSC’s interpretation of the interconnection agreement violated federal law; and second, that the PSC’s interpretation violated the parties’ intent as reflected in the agreement. The court took jurisdiction over the first claim and awarded summary judgment to the defendants. Then, the court held that neither § 252(e)(6) nor § 1331 supported jurisdiction over the remaining claim, which it construed as a contract misinterpretation claim arising under state law. Id. at 487. The court declined to exercise supplemental jurisdiction over this claim and dismissed it. See 28 U.S.C. § 1367(a). Verizon and the PSC commissioners appeal.
II.
Verizon appeals two issues from the district court’s summary judgment order. First, Verizon argues that the district court erred in holding that there is no federal jurisdiction over its claim that the PSC misinterpreted the interconnection agreement. Second, Verizon challenges the district court’s determination that federal law did not prohibit the PSC from imposing reciprocal compensation terms in arbitration proceedings. We consider each issue in turn.
A.
1.
The district courts have original jurisdiction in all “civil actions arising under the Constitution, laws, or treaties of the United States.” 28 U.S.C. § 1331. There is no “single, precise definition” of what it means for an action to “arise under” federal law. Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). The Supreme Court has recognized § 1331 jurisdiction in a variety of cases, such as (1) when a federal right or immunity forms an essential element of the plaintiffs claim, Gully v. First Nat’l Bank in Meridian, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936); (2) when a plaintiffs “right to relief depends upon the construction or application” of federal law, and the federal nature of the claim “rests upon a reasonable foundation,” Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199, 41 S.Ct. 243, 65 L.Ed. 577 (1921); (3) when “federal law creates the cause of action,” Merrell Dow, 478 U.S. at 808, 106 S.Ct. 3229; and (4) when “the plaintiffs right to relief necessarily depends on resolution of a substantial question of federal law,” Franchise Tax Board, 463 U.S. at 28, 103 S.Ct. 2841. One commentator has suggested that the various Supreme Court statements boil down to the principle that federal jurisdiction exists when a plaintiff has “a substantial claim founded ‘directly’ upon federal law.” Paul J. Mishkin, “The Federal ‘Question’ in the District Courts,” 53 Colum. L.Rev. 157, 165 (1953). See also Int’l Armor & Limousine Co. v. Moloney Coachbuilders, Inc., 272 F.3d 912, 915 (7th Cir.2001) (stating that “Professor Mish-kin’s appraisal remains apt”). The Su *363 preme Court has shied away from a rigid test for § 1331 jurisdiction because “the phrase ‘arising under’ masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.” Merrell Dow, 478 U.S. at 808, 106 S.Ct. 3229 (quoting Franchise Tax Bd., 463 U.S. at 8, 103 S.Ct. 2841). For example, when a federal court “explor[es] the outer reaches of § 1331,” it must make “sensitive judgments about congressional intent, judicial power, and the federal system.” Merrell Dow, 478 U.S. at 810, 106 S.Ct. 3229. See also Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 806-07 (4th Cir.1996).
In all events, the question of whether a claim arises under federal law begins with a look at “the face of the plaintiffs properly pleaded complaint.” Caterpillar v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In this case, we also consider whether the claim involves an agreement and duties that are creations of federal law and whether the purpose of the underlying statute (the 1996 Act) is best served by the exercise of federal judicial power. These considerations lead us to conclude, as we explain below, that Verizon’s contract interpretation claim arises under federal law within the meaning of § 1331.
We turn first to Verizon’s amended complaint, which challenges the PSC’s determinations that Verizon must pay reciprocal compensation on ISP-bound traffic. Count I alleges that the “PSC’s decision that Internet communications constitute ‘local traffic’ within the meaning of the [interconnection] Agreement is inconsistent with federal law and the language of [the] agreement[ ].” J.A. 40. As the district court reasonably determined, Verizon is asserting two distinct claims in Count I: first, that the PSC’s interpretation of the interconnection agreement violated federal law; and second, that the PSC misinterpreted the language of the agreement. The district court erred, however, in concluding that the second of these claims— alleging misinterpretation of the agreement — was an ordinary state-law contract claim.
Verizon begins the central allegations of its amended complaint by stating that the purpose of the interconnection agreement is “[t]o implement the substantive duties” imposed by the 1996 Act, including “the dut[y] to establish reciprocal compensation arrangements for local traffic.” J.A. 35. Pertinent pages of the agreement are attached to Verizon’s amended complaint and are therefore a part of that pleading. See Fed.R.Civ.P. 10(c). The agreement contains key provisions on reciprocal compensation that refer directly to federal law. To begin with, the agreement provides that “ ‘Reciprocal Compensation’ is As Described in the Act, and refers to the payment arrangements that recover costs incurred for the transport and termination of Local Traffic originating on one Party’s network and terminating on the other Party’s network.” J.A. 73 (emphasis added). “As Described in the Act” means “as described in or required by the Act and as from time to time interpreted in the duly authorized rules and regulations of the FCC or the [PSC].” J.A. 67. Finally, the interconnection agreement defines “Local Traffic” in a manner that corresponds to the then-existing FCC regulation, 47 C.F.R. § 51.701(b)(l)(1996): local traffic is that originating on one party’s network and terminating on another’s “within a given local calling area,” based on the “actual originating and terminating points of the complete end-to-end call.” J.A. 71, 77. Thus, according to Verizon’s complaint, whether it must pay reciprocal compensation on ISP-bound traffic under the terms of the agreement depends in substantial *364 measure upon the requirements of the Act and the FCC’s regulations and interpretations. On its face, then, Verizon’s contract claim is tied directly to federal law, and its asserted basis in federal law is not “insubstantial [or] frivolous.” Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).
Whether Verizon’s contract claim is substantially federal also depends on the nature and purpose of the contract, an interconnection agreement. Here, we are guided by International Association of Machinists v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963), which held that a suit to enforce a contract required by the Railway Labor Act raised a federal question under 28 U.S.C. § 1331. Section 204 of the Railway Labor Act required every airline and its employees (through their union) to establish a board of adjustment to decide employee grievances. The statutory duty to create the board was implemented by contract. Wdien the union and several employees sued an airline in federal court to enforce the award of an adjustment board, the Fifth Circuit affirmed the dismissal of the complaint, saying that the “suit was nothing more than a state-created action to construe a contract.” Id. at 684, 83 S.Ct. 956 (internal quotation marks omitted). The Supreme Court reversed. The Court explained that “[i]f these contracts [creating the adjustment boards] are to serve their function under [the Railway Labor Act], their validity, interpretation, and enforceability cannot be left to the laws of the many States.” Id. at 691, 83 S.Ct. 956 (emphasis added). Because both the contract and the adjustment board it established “are creations of federal law” and are “therefore governed and enforceable by federal law,” the district court had jurisdiction over the enforcement action under § 1331. Id. at 692, 83 S.Ct. 956.
An interconnection agreement is likewise a “creation of federal law,” specifically, the 1996 Act. As one court has said, interconnection agreements are the “tools through which [the 1996 Act] is [implemented and] enforced.” BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., Inc., 317 F.3d 1270, 1278 (11th Cir.2003) (en banc). The Act requires an incumbent local carrier and its aspiring competitor to enter into an interconnection agreement that sets forth the “terms and conditions ... to fulfill the duties” mandated by § 251(b) and § 251(c) of the Act. 47 U.S.C. § 251(c)(1). One duty mandated by § 251(b) is at issue here, the “duty [of local carriers] to establish reciprocal compensation arrangements for the transport and termination” of calls. Id. § 251(b)(5). If the parties enter into an agreement by voluntary negotiation, they may agree “without regard to the standards set forth” in § 251(b) and § 251(c). Id. § 252(a)(1). They must still, however, spell out how they will fulfill the duties imposed by § 251. See id. § 251(c)(1). When an agreement, like the one voluntarily negotiated by Verizon and MCI, is submitted to the state commission for approval, the commission may reject it only if it discriminates against a carrier not a party, or it is not consistent with “the public interest, convenience, and necessity.” Id. § 252(e)(2)(A). Once the agreement is approved, the 1996 Act requires the parties to abide by its terms. See §§ 251(b)-(c).
Interconnection agreements are thus the vehicles chosen by Congress to implement the duties imposed in § 251. They are, in short, federally mandated agreements, and “[t]o the extent [an agreement] imposes a duty consistent with the Act ... that duty is a federal requirement.” Central Airlines, 372 U.S. at 695, 83 S.Ct. 956. The contractual duty at issue in this case — to pay reciprocal compensation “for transport *365 and termination of Local Traffic”' — 'is a duty imposed by the 1996 Act. The scope of this duty is at the heart of Verizon’s contract claim, and the resolution of that claim depends on the interpretation and application of federal law. Smith v. Kansas City Title & Trust Co., 255 U.S. at 199, 41 S.Ct. 243; Ormet, 98 F.3d at 807.
Finally, we recognize that “[t]he determination of whether a federal issue is sufficiently substantial should be informed by ... whether the [exercise] of federal judicial power is both appropriate and pragmatic.” Ormet, 98 F.3d at 807. See also, Merrell Dow, 478 U.S. at 808-09, 106 S.Ct. 3229. This area of consideration takes us to the basic purpose of the 1996 Act. As the Supreme Court said, the Act took “the regulation of local [telephone service] away from the States” and established “a new federal regime” designed to promote competition. AT & T Corp. v. Iowa Utils. Bd., 525 U.S. 366, 378 n. 6, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999) (emphasis in original). State utility commissions have a role in this regime, but that role is subject to federal oversight. Here, the PSC interpreted an interconnection agreement mandated by the Act. Because the agreement and the specific duty (reciprocal compensation) it incorporates have a direct connection to the Act, the purpose of the Act is best served by subjecting the PSC’s contract interpretation decision to federal review in the district court. See BellSouth Telcomms., Inc. v. MCIMetro Access Trans. Servs., Inc., 317 F.3d 1270, 1278 (11th Cir.2003) (en banc).
2.
The dissent argues that there is no § 1331 jurisdiction over Verizon’s contract interpretation claim because “[t]he federal interest in the content of local carriers’ voluntarily negotiated reciprocal-compensation terms is negligible.” Post at 393. The interest is negligible, the dissent says, because there is “authority to negotiate terms without regard to” the standards mentioned in 47 U.S.C. § 251(b) and (c). Post at 391. This line of argument, we respectfully suggest, overlooks how important reciprocal compensation is to the Act’s central purpose of promoting competition in local telephone markets. The Act imposes five duties on “[e]ach local carrier,” and one of these duties is “to establish reciprocal compensation arrangements for the transport and termination of’ local traffic. 47 U.S.C. § 251(b)(5). The fulfillment of this duty is essential to the Act’s pro-competitive design, which requires local carriers to complete calls for each other. Thus, even when the “reciprocal compensation arrangements” are spelled out in an interconnection agreement that is voluntarily negotiated, there is a substantial federal interest in those arrangements. Moreover, in this case the interconnection agreement incorporates key provisions of federal law in delineating the compensation arrangements or duties.[1]
*366 The dissent relies on Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union, 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982), to support its argument that Verizon’s contract misinterpretation claim cannot be brought in federal court. Jackson Transit is readily distinguishable. That case involves § 13(c) of the Urban Mass Transportation Act of 1964 (UMTA), 78 Stat. 307 (codified as amended, 49 U.S.C. §§ 5301-5338), which requires a state or local government to make arrangements to preserve the existing collective bargaining rights of transit workers before the governmental body may receive federal monies to acquire a privately owned transit company. When a transit union sued a city in federal court for breach of a § 13(c) agreement, the Supreme Court held there was no federal question jurisdiction. The Court began its analysis by noting that “labor relationships between local governments and their employees are the subject of a longstanding statutory exemption from the National Labor Relations Act.” Jackson Transit, 457 U.S. at 23, 102 S.Ct. 2202. And, after considering the legislative history of § 13(c), the Court concluded that “Congress intended those contracts [between transit workers and local governments] to be governed by state law applied in state courts.” Id. at 29, 102 S.Ct. 2202. This holding sets Jackson Transit apart from the 1996 Act and this case. Unlike § 13(c) of the UMTA, which did not “substitute a federal law of collective bargaining for state labor law,” id. at 28, 102 S.Ct. 2202, the Telecommunications Act of 1996 removed the regulation of local telephone markets “from the States’ exclusive control” and substituted a federally prescribed regulatory program. Iowa Utils. Bd., 525 U.S. at 381 n. 8, 119 S.Ct. 721. Again, federally mandated duties, including the duty to pay reciprocal compensation, are the backbone of the new program. As a result, when there is a claim that a state utility commission has misinterpreted an interconnection agreement provision that implements a duty imposed by the Act, review should be available under § 1331 in district court. We are not saying that every dispute about a term in an interconnection agreement belongs in federal court, but when the contractual dispute (like the one here) involves one of the 1996 Act’s essential duties, there is a federal question.
3.
In sum, because (1) Verizon’s complaint alleges that the PSC misinterpreted interconnection agreement provisions that incorporate federal law, (2) the agreement interpreted is federally mandated, (3) the contractual duty at issue is imposed by federal law, and (4) the purpose of the 1996 Act is best served by allowing review of the PSC’s order in the district court, we hold that Verizon’s contract claim in Count I raises a substantial question of federal law. The claim therefore arises under federal law, conferring jurisdiction in the district court under 28 U.S.C. § 1331.[2]
B.
Verizon next challenges the district court’s grant of summary judgment to the defendants on Count II, which alleges that “the PSC’s decision to require reciprocal compensation for [ISP-bound] traffic in instances [that is, in arbitration proceedings] where the parties could not agree on the rules governing compensation for such traffic violates federal law.” J.A. 40. We affirm because the 1996 Act authorizes the PSC to arbitrate open issues on reciprocal *367 compensation, and the FCC has declared that state commissions had the authority to require reciprocal compensation for ISP-bound traffic in arbitrations conducted during the time frame involved in this case.
First of all, the Act expressly authorizes state commissions to impose reciprocal compensation requirements in § 252 arbitration proceedings. In resolving “any open issues” between parties negotiating an interconnection agreement, a state commission must ensure that the resolution meets the requirements of § 251. 47 U.S.C. §§ 252(b)(1), 252(c)(1). Section 251(b)(5), of course, imposes the requirement “to establish reciprocal compensation arrangements.”
One arbitration order that Verizon complains about is the PSC’s Sprinb-Verizon order of February 9, 1999, that imposed terms requiring Verizon to pay reciprocal compensation for ISP-bound calls. At the time the PSC issued the Sprint-Verizon order, the FCC was treating ISP-bound calls “as though [they] were local,” J.A. 49, and the PSC therefore concluded that these calls were subject to reciprocal compensation from Verizon. The PSC reconsidered this decision after the FCC, on February 26, 1999, issued its ISP Order No. 1, classifying ISP-bound calls as non-local. In the order issued on June 11, 1999, the PSC concluded that it was not required to alter its prior arbitration decision because the FCC had explicitly provided in ISP Order No. 1 that state commissions may “ ‘determine in their arbitration proceedings at this point that reciprocal compensation should be paid for [ISP-bound] traffic.’ ” J.A. 57 (citing ISP Order No. 1 at ¶ 25). State commissions were to have this leeway pending completion of FCC rulemaking on the issue. The PSC thus decided that Verizon must continue to pay reciprocal compensation under its arbitrated agreement as an interim compensation mechanism. The PSC relied on this same reasoning on February 10, 2000, when it imposed terms requiring reciprocal compensation on ISP-bound traffic in a Verizon-MCI arbitration.
The FCC’s ISP Order No. 1 was, of course, vacated by the D.C. Circuit on March 24, 2000. Bell Atlantic Tel. Cos. v. FCC, 206 F.3d 1 (D.C.Cir.2000). Thereafter, on April 27, 2001, the FCC issued its ISP Order No. 2, which remains in force because the D.C. Circuit did not vacate the order when it remanded the case for further consideration by the FCC. 16 F.C.C.R. 9151 (2001), remanded, WorldCom, Inc. v. FCC, 288 F.3d 429 (D.C.Cir.2002). In ISP Order No. 2 the FCC adopted a new compensation regime (bill- and-keep) to govern ISP-bound calls and announced that it was stripping state commissions of any authority to formulate the compensation regime for such calls. See ISP Order No. 2 at ¶¶ 77-82. At the same time, the FCC explained that its order did not “preempt any state commission decision regarding compensation for ISP-bound traffic for the period prior to the effective date [June II, 2001] of the interim regime we adopt here.” Id. at ¶ 82 (emphasis added). The FCC’s ISP Order No. 2 thus expressly preserves the arbitration decisions here because they were issued before June 14, 2001.
As we said when this case was here the first time:“[i]t is hard to conceive how the Public Service Commission can be said to have perpetrated [in arbitration proceedings] an ongoing violation of federal law by following the dictates of the federal agency authorized to implement that law, especially when the charging party relies on the federal agency’s interpretation as authoritative.” Bell Atlantic Md., 240 F.3d at *368 296. We affirm the district court’s grant of summary judgment on Count II.
III.
The PSC commissioners (PSC) raise three issues on cross-appeal stemming from the district court’s denial of their motion to dismiss Verizon’s amended complaint.
A.
The PSC first argues that Congress, in violation of the Tenth Amendment, “has commandeered State officials to administer its federal program regulating local telephone service.” PSC’s Opening Br. at 15. The PSC acknowledges that states are not required to assume the regulatory responsibilities set forth in § 252 of the Act, but it points out that states must either undertake those responsibilities or relinquish the authority to regulate to the FCC. This choice, contends the PSC, amounts to unconstitutional coercion. We disagree.
When Congress brought the regulation of competition in local telephone markets under federal control in the 1996 Act, it could have placed regulatory authority exclusively with the FCC. But Congress chose a different course, giving states the option to participate in the federally prescribed regulatory scheme. That approach is permissible under the Tenth Amendment as the Supreme Court made clear in Hodel v. Virginia Surface Mining and Reclamation Association, Inc., 452 U.S. 264, 289, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (upholding the Surface Mining Control and Reclamation Act, a federal statute prescribing “federal minimum standards governing surface coal mining, which a State may either implement itself or else yield to a federal administered regulatory program.”). Congress, of course, may not “compel the states to enact or administer a federal regulatory program.” New York v. United States, 505 U.S. 144, 188, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). Here, however, Congress has simply required states to choose between regulating pursuant to federal standards or allowing the FCC to take over. As the district court said, “[t]he choice that § 252 offers may be (somewhat) unsavory [to the states], yet it remains a real choice.” Verizon Md. Inc., 232 F.Supp.2d at 558. In short, the Act is consistent with the Tenth Amendment.
B.
The PSC next contends that the district court erred when it refused to dismiss Count I of Verizon’s complaint for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). The PSC is not making a true failure to state a claim argument. It begins by saying that because § 252(e)(6) fails to provide an express cause of action for review of a state commission’s interpretation of an interconnection agreement, there is no federal jurisdiction over Count I. It then says that because there is no cause of action implied in § 252(e)(6), see Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), Count I does not state a claim. The PSC is committing the common error of confusing the jurisdictional issue with the issue of whether a claim is stated. See Montana-Dakota Utilities Co. v. Northwestern Public Serv. Co., 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951) (“As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action.”).
Count I states a claim upon which relief can be granted: it alleges that the PSC misinterpreted the federally mandated interconnection agreement, and Verizon *369 seeks declaratory and injunctive relief to correct the alleged misinterpretation. Because we have held in part II.A that there is federal question jurisdiction over this claim under § 1331, we need not inquire into whether § 252(e)(6) provides a cause of action. See Verizon, 535 U.S. 635, 122 S.Ct. 1753. When a “case’s resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331,” there is § 1331 jurisdiction even though the relevant statute does not explicitly or implicitly provide for a cause of action. Ormet, 98 F.3d at 806. See also Central Airlines, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67. We therefore reject the PSC’s argument that Count I’s contract misinterpretation allegations do not state a claim.
C.
Finally, the PSC argues that Verizon did not file its complaint within the period prescribed in the applicable statute of limitations. The PSC did not raise a limitations defense by way of answer or motion in district court. One defendant, Core Communications, Inc., did move to dismiss Verizon’s complaint on statute of limitations grounds, and the district court concluded after full briefing that “Verizon’s claim against Core [was] timely.” Verizon Md. Inc., 232 F.Supp.2d at 554. In these circumstances the PSC’s failure to assert a limitations defense in district court leads us to conclude that the issue is waived for this appeal. See Peterson v. Air Line Pilots Ass’n, Inter’l, 759 F.2d 1161, 1164 (4th Cir.1985); Fed.R.Civ.P. 8(c). The PSC’s cross-appeal is therefore dismissed with respect to the statute of limitations issue.
IV.
To sum up, in Verizon’s appeal we reverse the district court’s summary judgment order to the extent it holds there is no federal question jurisdiction over Verizon’s contract misinterpretation claim, and we affirm that order to the extent it holds the PSC had the authority under federal law to impose reciprocal compensation terms in arbitration proceedings. In the PSC commissioners’ cross-appeal we affirm the district court’s order denying their motion to dismiss Verizon’s amended complaint on Tenth Amendment grounds and for failure to state a claim, and we dismiss the commissioners’ cross-appeal on the issue that Verizon’s action is barred by the statute of limitations. The case is remanded for further proceedings on Verizon’s contract misinterpretation claim.

REVERSED AND REMANDED IN PART, AFFIRMED IN PART, and DISMISSED IN PART

. We do not miss the point of the dissent's argument against § 1331 jurisdiction, which is that the parties' latitude to negotiate reciprocal compensation terms means that there is no federal interest in the determination "whether [they] reached agreement on treating [ISP-bound] calls as local calls eligible for reciprocal compensation.” Post at 391 n. 9. The dissent's focus is much too narrow. The jurisdictional analysis must take into account the broader federal interest; it must recognize that the interconnection agreement and the duties specified therein, including the duty to arrange for reciprocal compensation, have the imprimatur of federal law. See Central Airlines, 372 U.S. at 692, 83 S.Ct. 956. Even though the Act allows flexibility in the contractual terms negotiated for carrying out the reciprocal compensation duty, the duty,is still a key federal requirement.

., Because there is § 1331 jurisdiction, we decline to decide whether jurisdiction could be grounded independently on 47 U.S.C. § 252(e)(6).