NUVOX COMMUNICATIONS, INC. and NEWSOUTH COMMUNICATIONS CORP., Plaintiffs,

v.

NORTH CAROLINA UTILITIES COMMISSION; Jo Anne Sanford, Chairman, J. Richard Conder, Commissioner, Robert V. Owens, Jr., Commissioner, Sam J. Ervin, IV, Commissioner, Lorinzo L. Joyner, Commissioner, James Y. Kerr, II,

Commissioner, and Michael F. Wilkins, Commissioner (in their official capacities as Commissioners of the North Carolina Utilities Commission); and Bellsouth Telecommunications, Inc., Defendants.

No. 5:05–CV–207–BR(3).

United States District Court, E.D. North Carolina, Western Division.

Jan. 20, 2006.

Melanie Black Dubis, Henry C. Campen, Jr., Parker, Poe, Adams & Bernstgein, Raleigh, NC, for Plaintiffs.

Karen Elizabeth Long, Margaret A. Force, N.C. Department of Justice, Edward S. Finley, Jr., Raleigh, NC, for Defendants.

## ORDER

BRITT, Senior District Judge.

This matter is before the court for disposition following oral arguments heard on 6 June 2005, and additional briefing ordered by the court on 5 October 2005.

## I. BACKGROUND

Plaintiffs NuVox Communications, Inc. ("NuVox") and NewSouth Communications Corp. ("NewSouth") are competitive local exchange carriers ("CLECs") authorized by the North Carolina Utilities Commission ("NCUC") to provide local telephone service in North Carolina. Verified Compl. ¶ 11. Accordingly NuVox and NewSouth entered into interconnection agreements with defendant BellSouth Telecommunications, Inc. ("BellSouth"), an incumbent local exchange carrier ("ILEC"), on 30 June 2000 and 18 May 2001, respectively.[1] *Id.* ¶ 2; *see also* Pls.' Exhs. 5, 9; Def.'s App. pp. 14, 161, 211 (copies of the agreements). The agreements were negotiated to cover a nine-state service region, but under relevant law, the parties were required to submit the agreement to the utility commission for approval in each state covered by the agreement. *See* 47 .U.S.C. §§ 252(a)(1) and (e); Verified Compl. ¶ 18; Def.'s 5/27/05 Br. at 3.

Under the agreements, plaintiffs are allowed to convert their more-expensive "special access circuits" to a certain type of less-expensive telecommunications circuit ("EEL") so long as they "self-certify to BellSouth in the manner specified in paragraph 29 of the [FCC's Supplemental Order Clarification ("SOC")[2] that the circuits to be converted qualify for conversion." Pls.' Exh. 5, Def.'s App. p. 110 (NuVox Agmt. ¶ 10.5.2); Pls.' Exh. 9, Def.'s App. p. 252 (NewSouth Agmt. ¶ 4.5.1.2). The agreements also contain (in pertinent part) the following provision:

> BellSouth may, at its sole expense, and upon thirty (30) days notice to [plaintiffs], audit [plaintiffs'] records not more than one [sic] in any twelve month period, unless an audit finds non-compliance with the local usage options referenced in the [SOC], in order to verify the type of traffic being transmitted over [the EELs] . . . .

Def.'s App. pp. 111 (NuVox Agmt. ¶ 10.5.4), 253 (NewSouth Agmt. ¶ 4.5.1.5).

In 2002, BellSouth provided written notice to plaintiffs of its intent to audit plaintiffs' EELs. Pls.' Exhs. 7, 10; Def.'s App. pp. 19–20, 201–202 (letters from BellSouth to plaintiffs). Plaintiffs objected to the audits, contending that BellSouth was required to "demonstrate a concern" as grounds for the audits under the SOC and that the auditor selected by BellSouth was not sufficiently "independent." Pls.'

---

1. After the events giving rise to this action occurred, NuVox and NewSouth entered into an asset purchase agreement, and NewSouth ceased to exist as a separate entity on 31 December 2004. Verified Compl. ¶ 10.

2. The SOC will be further discussed *infra.* Briefly, in order to be entitled to convert a circuit to an EEL, a CLEC must be providing " 'a significant amount of local exchange service'[.]" SOC, 15 F.C.C.R. at 9602–03.

5/27/05 Br. at 7, 10; Def.'s Appx. pp. 64–67, 192–93 (memorandum from NuVox and letter from NewSouth objecting to proposed audit).

BellSouth filed complaints with the Georgia Public Service Commission ("GPSC") to compel the audits in Georgia, and, after an evidentiary hearing, the GPSC ruled that BellSouth could audit "circuits for which BellSouth has demonstrated a concern." Pls.' Exh. 8 (GPSC NuVox Order)[3] at 11. Significantly for the purposes of this case, the GPSC concluded that the SOC "requires that Bell-South demonstrate a concern" in order to conduct an audit of an ILEC's EELs and that the agreements incorporate this requirement because it was part of the "relevant law at the time the parties negotiated the [a]greement[s], and [the agreements] ... do[ ] not contain any language indicating that the parties did not intend to contract with reference to existing law." Id. at 5–8.

BellSouth also filed complaints with the NCUC to compel the audits in this state, and the NCUC awarded BellSouth "summary disposition" without any hearing on both complaints. Pls.' Exhs. 2, 4; Def.'s Appx. at 140–55, 267–78 (NCUC orders). Specifically, the NCUC "conclude[d] that the parties did not expressly incorporate the SOC into the [a]greement[s] and that the parties agreed that the EEL audit provisions [quoted above] ... would govern EEL audits." Def.'s Appx. at 271 (NCUC NewSouth Order at 5). In the alternative, the NCUC held that BellSouth "[met] any threshold requirement of 'having a concern' that may have been established by the SOC as a precondition to an

audit." Id. at 151 (NCUC NuVox Order at 12).

Plaintiffs filed a verified complaint in this court on 28 March 2005 seeking declaratory and injunctive relief from the NCUC orders under 47 U.S.C. § 252 and *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland,* 535 U.S. 635, 643, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (a party to an interconnection agreement may seek review of a utility commission's interpretation of that agreement under the general grant of jurisdiction set forth in 28 U.S.C. § 1331 and § 252(e)(6) of the Telecommunications Act of 1996). The court held a hearing on plaintiffs' motion for a temporary restraining order on 31 March 2005, and by order filed 4 April 2005, the court allowed that motion. The court heard oral arguments on the merits of the case on 6 June 2005. By order filed 5 October 2005, the court sought additional briefing from the parties on the issue of subject matter jurisdiction, and all parties filed briefs on that issue on 20 October 2005.

## II. DISCUSSION

As noted in its order of 5 October 2005, the court must address the issue of whether it has jurisdiction. "[P]arties may not waive or consent to federal subject matter jurisdiction" and the court "must raise it sua sponte if jurisdiction appears questionable ...." *Roche v. Lincoln Prop. Co.,* 373 F.3d 610, 621 (4th Cir.2004) (citing *State v. Ivory,* 906 F.2d 999, 1001 n. 2 (4th Cir. 1990)). Plaintiffs argue that the court has subject matter jurisdiction under *Verizon Maryland, Inc. v. Public Serv. Comm. of Md.,* 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002), and *Verizon Mary-*

---

**3.** Plaintiffs filed copies of the GPSC Orders in the underlying actions before the NCUC, and therefore, those orders are a part of the record. *See* Def.'s Appx. at 142 (NCUC NuVox Order at 3) (noting that NuVox had filed a motion asking the NCUC to adopt the GPSC order), 274 (NCUC NewSouth Order at 8 n. 3) (noting reliance by NewSouth and NCUC staff on reasoning in GPSC orders).

*land, Inc. v. Global Naps, Inc.,* 377 F.3d 355 (4th Cir.2004). BellSouth and the NCUC argue that the court lacks subject matter jurisdiction because plaintiffs' claims do not raise a federal question.

"In all events, the question of whether a claim arises under federal law begins with a look at 'the face of the plaintiff's properly pleaded complaint.'" *Global Naps,* 377 F.3d at 363 (quoting and citing *Caterpillar v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)); *see also Interstate Petroleum Corp. v. Morgan,* 249 F.3d 215, 220 (4th Cir.2001) (where a federal act does not grant jurisdiction "[ ]either directly [ ]or by implication, . . . . [t]he way to ascertain the proper answer to this question [of jurisdiction] is by an examination of the complaint"); *see also Puerto Rico Tel. Co. v. Telecomms. Regulatory Bd. of Puerto Rico,* 189 F.3d 1, 15 (1st Cir.1999) (a carrier seeking review of a utility commission's decision in federal court may not simply allege that the decision violates federal law, "but must identify the portions of the Act that it claims are at issue and give some reasoned explanation in support of its contentions"). The court must examine the complaint to determine "whether [the plaintiff]'s 'right to relief necessarily depends on resolution of a substantial question of federal law,' as shown by 'a well pleaded complaint.'" *Interstate Petroleum Corp.,* 249 F.3d at 220. "A plaintiff's right to relief necessarily depends on a question of federal law when it appears that some disputed question of

federal law is a necessary element of one of the well-pleaded state claims." *Pinney v. Nokia, Inc.,* 402 F.3d 430, 442 (4th Cir.2005) (quotation, citation, and alteration omitted). "Plaintiffs' complaint alleges that the [NCUC] misinterpreted interconnection agreements that incorporate federal law . . . ." Pls.' 10/20/05 Br. at 8; *see also* Verified Compl. ¶¶ 22, 25–26, 45, 47–48 (the agreements are governed by Georgia law, and the disputed provisions of the SOC "are incorporated into the . . . agreement[s] under operation of Georgia law" because Georgia law requires that "laws in existence when the parties enter into a contract is incorporated into the contract unless such law is expressly excluded or displaced").

In *Global Naps,* the Fourth Circuit held that federal question jurisdiction under 28 U.S.C. § 1331 existed in an action seeking review of an order of the Maryland utilities commission ("PSC") interpreting an interconnection agreement and the Telecommunications Act.[4] 377 F.3d at 366. The court found that the plaintiff's complaint "raise[d] a substantial question of federal law" for four reasons:

> (1) [the] complaint alleges that the PSC misinterpreted interconnection agreement provisions that incorporate federal law, (2) the agreement interpreted is federally mandated, (3) the contractual duty at issue is imposed by federal law, and (4) the purpose of the 1996 Act is best served by allowing review of the PSC's order in the district court[.]

4. The procedural history of *Global Naps* bears repeating. In that case, the Fourth Circuit had previously affirmed the district court's dismissal of the case for lack of jurisdiction, finding that neither the Telecommunications Act nor 28 U.S.C. § 1331 provided a basis for jurisdiction. *Bell Atlantic Md., Inc. v. MCI Worldcom, Inc.,* 240 F.3d 279, 307–09 (4th Cir.2001). The Supreme Court reversed, holding that even if the Telecommunications Act "does not *confer* jurisdiction, it at least

does not *divest* the district courts of their authority under 28 U.S.C. § 1331 to review the Commission's order for compliance with federal law." *Verizon Maryland, Inc.,* 535 U.S. at 642, 122 S.Ct. 1753 (emphasis in original). Thus, in *Global Naps,* the court found federal question jurisdiction under 28 U.S.C. § 1331, and "decline[d] to decide whether jurisdiction could be grounded independently on" the provisions of the Telecommunications Act. 377 F.3d at 366 n. 2.

*Id.* In arriving at its decision, the Fourth Circuit noted that it was "not saying that every dispute about a term in an interconnection agreement belongs in federal court, but when the contractual dispute ... involves one of the 1996 Act's essential duties, there is a federal question." *Id.* The court concludes that this is a case which does not belong in federal court.

First, *Global Naps* is distinguishable in an important way from the instant case. In *Global Naps*, the interconnection agreement at issue "required the payment of reciprocal compensation 'for transport and termination of Local Traffic.'"[5] *Id.* at 359. After entering into their interconnection agreement, the parties disputed whether calls to internet service providers ("ISPs") were "Local Traffic" under the agreement. *Id.* They litigated the issue before the PSC, which ruled that the term "Local Traffic" did encompass ISP calls, but specifically "noted that it would reconsider its order if the FCC, which was considering how to treat ISP-bound calls, issued a decision that resolved the issue." *Id.* at 360. The FCC ultimately[6] ruled that ISP calls were exempt from reciprocal compensation obligations under 47 U.S.C. § 251(g), but established a different compensation system for ISP calls. *Id.* at 361. In sum, because the parties had not defined a term in their contract, the court had to look to telecommunications law to define it for them, and therefore the court's resolution of the litigation "depend[ed] in substantial measure upon the requirements of the [Telecommunications] Act and the FCC's regulations and interpretations." *Id.* at 363–64. Here, however, the parties have set forth terms for an audit, and the only way for the court to

impose any additional term is if the interconnection agreements incorporate such term under Georgia contract law. *See* Verified Compl. ¶¶ 47–48 ("the concern and independent auditor requirements [of the SOC] are incorporated into the ... agreement[s] *under operation of Georgia law*" (emphasis added)).

Second, in *Global Naps*, the Fourth Circuit found federal question jurisdiction in part because of "how important reciprocal compensation is to the [Telecommunications] Act's central purpose of promoting competition in local telephone markets." 377 F.3d at 365 (noting that "[t]he Act imposes five duties on '[e]ach local carrier,' and one of these duties is 'to establish reciprocal compensation arrangements for the transport and termination of' local traffic") & n. 1 ("Even though the Act allows flexibility in the contractual terms negotiated for carrying out the reciprocal compensation duty, the duty is still a key federal requirement."). By contrast, there is no mention of audits in the Telecommunications Act, and the contractual term at issue in this litigation was "not ... mandated" by the Act. *Id.* at 370 (Niemeyer, J., dissenting). Therefore, the NCUC's conclusions regarding the terms of the agreements at issue did "not violate the [Telecommunications] Act or the FCC's interpretation of the Act [as plaintiffs contend]. In fact, the [NCUC] was doing what it is charged with doing in the Act .... It was determining what the parties intended under the agreements." *Illinois Bell Tel. Co. v. Worldcom Technologies, Inc.*, 179 F.3d 566, 573 (7th Cir.1999) (holding that the Act "authorizes a federal court to determine whether the [commission]'s

---

5. "The duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications" is an express obligation on all CLECs and ILECs under the Telecommunications Act. 47 U.S.C. § 251(b)(5).

6. The ruling was the subject of extensive litigation in the D.C. Circuit Court, which remanded the issue twice to the FCC while the issue was being litigated in the *Global Naps* case, at both the district and appellate court levels. *Global Naps*, 377 F.3d at 360–61.

decision departs from federal law" and that a carrier aggrieved by a commission decision must therefore commence an action "in federal court (to find out whether there has been a violation of federal law) and then ... move to state court if the first suit yields the answer 'no' "), *cert. denied,* 535 U.S. 1107, 122 S.Ct. 2318, 152 L.Ed.2d 1071 (2002). The Act expressly provides for carriers to negotiate terms different from those set forth in the Act. *See* 47 U.S.C. § 252(a)(1); *Global Naps,* 377 F.3d at 391 (Niemeyer, J., dissenting) ("given [carriers'] ... authority to negotiate terms without regard to federal law, the terms [at issue] do not raise an issue of federal law in any meaningful way").

Thus, in the instant case, the court concludes that the relief sought by plaintiffs does not necessarily depend on resolution of a substantial question of federal law, nor is some disputed question of federal law a necessary element of plaintiffs' complaint. The parties do not dispute the provisions of the SOC; they dispute whether the terms of their interconnection agreements—which are to be interpreted under Georgia state contract law—incorporate SOC provisions not explicitly set forth otherwise. *See, e.g., Pinney,* 402 F.3d at 445 (class action for products liability, strict liability, consumer protection act violations, negligence and breach of implied warranties which questions "the validity and sufficiency of the federal [FCC] ... radiation standards for wireless telephones" does not depend on a resolution of a substantial question of federal law). "Federal jurisdiction is not justified merely because the state court may be required to resolve questions of federal law: '[F]ederal law must be in the forefront of the case and not collateral, peripheral or remote.' " *Virden v. Altria Group, Inc.,* 304 F.Supp.2d 832, 838 (N.D.W.Va.2004) (alteration in original, quoting *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 152 (4th Cir.1994)).

For the foregoing reasons, the court concludes that it lacks subject matter jurisdiction over this action, and it is hereby DISMISSED. The preliminary injunction, entered by the court by order filed 4 April 2005, is hereby DISSOLVED.