NEWSOM, Circuit Judge, concurring: I concur in the Court’s, judgment and join its opinion. I write separately only to underscore two points—one small, the other less so. As for the former, I believe, for reasons I will explain briefly, that the governing Supreme Court precedent—Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)—makes this case even more straightforward than the lead opinion here indicates. And as for the latter, I also believe—for reasons- I will explain - at ■ slightly greater length—that the Supreme Court’s Exxon decision is best understood as having narrowed what has been called the “so-called Rooker-Feldman doctrine,” Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 18, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Scalia, J., concurring), to its barest essence. I As an initial matter, to resolve this case, I would cut straight to the “final[ ]” consideration that the Court’s opinion emphasizes. Maj. Op. at 1288. In Exxon, the Supreme Court unanimously held that the Rooker-Feldman doctrine does not “stop a district court from exercising subject-mat--ter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.” 544 U.S. at 293, 125 S.Ct. 1517. To the contrary, the Court clarified, “[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.” Id. at 293, 125 S.Ct. 1517 (emphasis added; citation, internal quotation marks, and alteration omitted). The way I see it, that is precisely this case. Following the Alabama courts’ final resolution of Specialty Marketing’s suit for breach of contract and fraud, Target Media filed in federal court what is by all accounts an “independent claim”—namely, for defamation arising out of Specialty’s post-judgment letter. To be sure, Target’s defamation action may seek, at some level, to reopen a “matter previously litigated in state court”—that is, the truth of whether it engaged in fraud in its dealings with Specialty, as the Alabama courts found and Specialty’s letter asserted. And just as surely, Target’s defamation claim, which bottoms on a challenge to the truth of Specialty’s letter’s allegation, “denies a legal conclusion”—in particular, that Target engaged in fraud—“that a state court ... reached in a case to which [Target] was a party.” But these are precisely the circumstances that the Supreme Court envisioned in Exxon—and with respect to which it held that Rooker-Feldman does not pose a bar. So very simply, I just don’t see how the district court’s dismissal here can survive the clear teaching of Exxon. For me, anyway, that’s the beginning and the end of this particular case. II Now having said that, let me take a step back. The Supreme Court’s Exxon decision was a watershed in the so-called life of this so-called doctrine. Emphasizing that a number of lower courts had wrongly construed Rooker-Feldman to “extend far beyond” its original contours, 544 U.S. at 283, 125 S.Ct. 1517, the Supreme Court quite intentionally sought to “rein in” those overeager applications. 18B C. Wright, A. Miller et al., Federal Practice & Procedure § 4469.1 (2d ed. 2018). To that end, the Court repeatedly stressed that the Rooker-Feldman doctrine is “narrow,” “confined,” and “limited,” id. at 284, 291,125 S.Ct. 1517, and it took great pains to state—and then restate and restate— that the doctrine applies to preclude only those federal-court actions that actually seek to “reverse,” id. at 283, 125 S.Ct. 1517, “reject[ ],” id. at 284, 125 S.Ct. 1517, “overturn,” id. at 292, 125 S.Ct. 1517, or “undo,” id. at 293, 125 S.Ct. 1517, state-court judgments. On the flip side, the Court clarified (as just noted) that Rook-er-Feldman does not bar a federal-court suit simply because it relitigates a “matter” previously argued—or even “denies a legal conclusion” previously reached—in a state-court action. Id. at 293, 125 S.Ct. 1517. Why the renewed emphasis on the doctrine’s narrowness? Several reasons. First, Rooker-Feldman is a novelty in the law. It purports to oust federal courts’ subject-matter jurisdiction, but unlike most jurisdictional limitations, it is entirely “judge-made.” 18 J. Moore, Moore’s Federal Practice § 133.33[l][a], at 133-60 (3d ed. 2017). The doctrine’s jurisdictional restriction rests on what have been called the “perceived implications” of other jurisdictional grants. Wright & Miller, supra, § 4469.1. For instance, 28 U.S.C. § 1257 gives the United States Supreme Court appellate jurisdiction to review the final decisions of state courts—and thus, the theory goes, by negative implication denies to lower federal courts a similar authority. So too, 28 U.S.C. §§ 1331 and 1332 together give federal district courts jurisdiction to hear and decide cases as an original matter—and thus, Rooker-Feldman posits, by negative implication dpnies those courts any appellate capacity. None of this is necessarily to say that the inferences that underlie the Rooker-Feldman doctrine are illogical or invalid. But it is to say that they are inferences, which—especially given that we’re talking about subject-matter jurisdiction—should be reason enough to curb enthusiasm. Second, the Rooker-Feldman doctrine has no real forbears and, at least in the Supreme Court itself, no progeny. As the Court emphasized in Exxon, it has applied the doctrine to foreclose federal-court jurisdiction only twice, in the doctrine’s namesake decisions, Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Both were “wheelhouse” cases, so to speak, in that both were transparent, frontal assaults on state-court judgments. In particular, in Rooker, a plaintiff sued in federal court expressly asking to have a state-court order “declared null and void.” 263 U.S. at 414, 44 S.Ct. 149. Only slightly less conspicuously, in Feldman, disappointed bar applicants “commenced a federal-court action against the very [state-level] court that had rejected their applications,” seeking to review and reverse that court’s denial decision. Exxon, 544 U.S. at 283, 125 S.Ct. 1517 (describing Feldman). “Since Feldman,” the Supreme Court “has never applied Rooker-Feldman to dismiss an action for want of jurisdiction.” Id. at 287, 125 S.Ct. 1517. To the contrary, in every instance in which the issue has arisen, the Court has found the doctrine inapplicable. See, e.g., Lance v. Dennis, 546 U.S. 459, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006); Exxon, 544 U.S. 280, 125 S.Ct. 1517; Verizon Md. Inc. v. Pub. Serv. Comm’n of Md., 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002); Johnson v. De Grandy, 512 U.S. 997, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). A final reason for circumspection: As the Supreme Court emphasized in its most recent Rooker-Feldman decision, “[n]either Rooker nor Feldman elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts.” Lance, 546 U.S. at 464, 126 S.Ct. 1198 (emphasis added). And in fact, far from articulating any good reason to extend the judge-made jurisdictional rule, the Court has repeatedly warned that affirmative danger lurks in loose interpretations of Rooker-Feldman—among them, that the doctrine risks “superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738.” Exxon, 544 U.S. at 283, 125 S.Ct. 1517. It’s certainly not clear that Rooker-Feldman adds much of substance to preexisting preclusion doctrine. Many of the same federal-court suits that the Supreme Court in Exxon held will survive AtooAer-Feldman’s bar—those, for example, that seek to reopen “matter[s]” or “legal conclusion[s]” determined in state courts—will likely end up precluded under traditional res judicata or collateral estop-pel principles. Cf. Wright & Miller, supra, § 4469.1 (“This cabining of the Rooker- • Feldman doctrine - will not lead to widespread federal interference with state-court judgments. Claim and issue preclusion provide ample protection.”).[1] If a broad-ranging Rooker-Feldman doctrine merely duplicated ordinary preclusion rules, “it might seem harmless enough.” Id. But Rooker-Feldman doesn’t just duplicate preclusion doctrine—it changes it in significant ways. Initially, and most obviously, an, expansive Rooker-Feldman bar would take what are ordinary, waivable affirmative defenses—res judicata and collateral estoppel—and “ju-risdictionalize” them, meaning that federal. courts would be obliged (as they did here) to assess them sua sponte. See, e.g., Exxon, 544 U.S. at 284, 125 S.Ct. 1517 (observing that Rooker-Feldman implicates federal courts’ “subject-matter jurisdiction”); University of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) (“[A] federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking.”). Separately, and to me more perversely, the Rooker-Feldman doctrine federalizes whatever ground it is permitted to occupy. Under the Full Faith.and Credit Act, 28 U.S.C. § 1738, a federal court considering whether an existing state-court judgment is entitled to res-judicata or collateral-es-toppel effect is obliged to apply state preclusion law. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481-82, 102 S.Ct 1883, 72 L.Ed.2d 262 (1982). By “allowing] the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts,” Section 1738 embodies and underscores fundamental “concerns of comity and federalism.” Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). As the Supreme Court emphasized just a year after deciding Exxon, an overbroad understanding of Rooker-Feldman subverts those very same concerns: “Incorporation of preclusion principles into Rooker-Feldman risks turning that limited doctrine into a. uniform federal rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act.” Lance, 546 U.S. at 466, 126 S.Ct. 1198. Ironically, therefore, a rule that on its face might seem to protect state prerogatives—in the sense .that it limits the circumstances in which federal ■ courts,. can second-guess state-court judgments[2]—could, if allowed to balloon, actually undermine federalism interests by displacing vast swaths of state preclusion law. [[Image here]] For all of these reasons, it seems to me,' the Supreme Court was quite right in Exxon to call a halt to lower coftrts’ overbroad invocations of Rooker-Feldman. Because today’s opinion is faithful to Exxon and its cautionary message, I am pleased to join it. It is my sincere hope that our circuit will be similarly scrupulous in future cases. . Indeed, in this case, Target may well face substantial preclusion arguments on remand. See Oral Arg. Tr. at 11:20 (Question: "Will you [i.e., Target] face preclusion problems even if you get beyond Rooker-Feldman?” Answer: "May very well. And I don’t think Rooker-Feldman should be used as an issue preclusion tool, which is sort of what hap-, pened here.”). . See, e.g., Suzanna Sherry, Judicial Federalism in the Trenches: The Rooker-Feldman Doctrine in Action, 74 Notre Dame L. Rev. 1085, 1101 (1999) ("The Rooker-Feldman doctrine ... is specifically about federalism— under what circumstances may federal courts other than the Supreme Court sit in judgment on state courts?”).